122 P.3d 1067 (2005)
The PEOPLE of the State of Colorado, Petitioner-Appellee, In the Interest of B.C., A.C., R.C., and R.C., Children, and
Concerning M.S.C., Respondent-Appellant.
No. 04CA1933.
Colorado Court of Appeals, Division IV.
September 8, 2005.
*1069 Bruce T. Barker, County Attorney, R. Leeann Reigrut, Assistant County Attorney, Greeley, Colorado, for Petitioner-Appellee.
Henderson, Taylor & Rapp, LLP, Todd Taylor, Greeley, Colorado, for Respondent-Appellant.
Opinion by: Judge LOEB.
M.S.C. (mother) appeals from a judgment terminating the parent-child legal relationship between her and her children, B.C., A.C., R.C., and R.C. We affirm.
This expedited dependency and neglect proceeding was filed on September 10, 2002, because of concerns about mother's ability to provide proper care for the children. At that time, mother was living in a motel with the children, the youngest of whom was diagnosed with failure to thrive and immediately placed in foster care.
As the proceeding progressed, concerns arose about mother's mental health and domestic violence between her and the father. Eventually, the three older children had to be removed from the home, and mother was ordered to participate in therapeutic supervised visitation. Three months later, on September 25, 2003, the People filed a motion to terminate her parental rights pursuant to § 19-3-604(1)(c), C.R.S.2004.
Following a visit on September 30, 2003, the county department of social services (department) unilaterally suspended visits with the three older children because of mother's lack of cooperation with the visit supervisors. The trial court reinstated the visits on October 14, 2003, after a hearing on mother's motion to compel court-ordered visits.
Two weeks later, on October 29, 2003, mother got upset during a visit with the three older children. She yelled obscenities and physically overturned a dining room table, an outburst which was extremely frightening to the children. The following day, the department sought and received an ex parte order suspending further visits. Shortly thereafter, the guardian ad litem (GAL) filed a motion to suspend visits between mother and the youngest child.
After a review hearing on December 2, 2003, the trial court ordered that mother could send letters and gifts to the children through their therapists, and it set the GAL's motion to suspend visits with the youngest child for hearing on January 7, 2004. At the conclusion of the January hearing, the trial court denied mother's request to resume visitation and ordered the children's therapists to devise a written plan for resumption of visits.
During a pretrial readiness conference on January 29, 2004, the court again reviewed the issue of visitation because of the therapists' failure to submit a written visitation plan. The trial court ordered the department to ask the therapists to submit the visitation plan by February 6, 2004.
The older children's therapists submitted a visitation plan that contained eight detailed steps for resumption of visits, beginning with brief written correspondence to the children and culminating in lengthy unsupervised visits. The plan required mother to comply with her treatment plan, to gain an understanding and recognition of the children's individual needs, and to demonstrate appropriate parental concern. Finally, the plan advised that it was only a guideline, the success of which was dependent on mother's progress. The youngest child's therapist did not devise a plan to resume visitation, citing the pervasive impact of the abuse and trauma suffered by the child while in mother's care and the likelihood of disruption of the child's progress upon contact with mother.
When the termination hearing began on March 1, 2004, mother asserted that the trial court had improperly delegated the decision to resume visitation to the children's therapists and asked that visits be reinstated. Having recently retained new counsel, she also sought a continuance.
Because the termination hearing had been set with a break between the presentation of the People's and mother's cases, the trial court denied the continuance and stated that it would consider resumption of visitation on the basis of the evidence presented during *1070 three days allotted for the People's case. After hearing the testimony of the children's therapists, the visit supervisors, the foster parents, the caseworker, the psychologist who evaluated mother, the children's day care providers, the parents, and their family representative, the trial court found that mother had not successfully complied with the visitation plan submitted by the children's therapists and that resumption of visits was not in the children's best interests.
The termination hearing resumed on May 3, 2004, for presentation of the father's case. Mother's case was continued until July 19, 2004. On June 8, 2004, however, mother filed a motion for a forthwith hearing regarding visitation. Following an evidentiary hearing, the trial court denied mother's request to modify the therapists' visitation plan and to reinstate visits, and it ordered the therapists to provide written feedback concerning the appropriateness of mother's letters and cards written pursuant to the visitation plan.
The termination hearing concluded on July 19, 2004. Finding that the criteria for termination set forth in § 19-3-604(1)(c) had been established by clear and convincing evidence, the trial court terminated mother's parental rights. This appeal followed.

I.
Mother contends the trial court erred in delegating to the children's therapists its decision-making responsibility to determine when visitation with the children could resume. She argues that the Colorado Children's Code (Code), § 19-1-101, et seq., C.R.S.2004, requires the trial court to make decisions regarding contact between a parent and a child. She also argues that the children's therapists, unlike the trial court, had no duty to weigh the competing interests embodied in the Code and no obligation to recognize her fundamental liberty interest in the care, custody, and management of the children. Although we agree that decisions concerning visitation may not be unconditionally delegated to third persons, we perceive no reversible error under the circumstances of this case.
Among the express purposes of the Code is preservation of family ties. Section 19-1-102(1)(b), C.R.S.2004. However, the Code's overriding purpose is to protect the welfare and safety of children by providing procedures through which their best interests can be served. L.G. v. People, 890 P.2d 647 (Colo.1995); see § 19-1-102, C.R.S.2004.
To this end, dependency and neglect proceedings focus primarily on the protection and safety of children susceptible to harm from the effect of abuse and neglect, not on the custodial interest of the parent. L.G. v. People, supra; People in Interest of C.M., 116 P.3d 1278 (Colo.App.2005). When custodial issues arise in a dependency and neglect proceeding, they are governed by the Code, not the Uniform Dissolution of Marriage Act (UDMA), § 14-10-101, et seq., C.R.S.2004. L.A.G. v. People in Interest of A.A.G., 912 P.2d 1385 (Colo.1996); People in Interest of D.C., 851 P.2d 291 (Colo.App. 1993).
Section 19-3-208, C.R.S.2004, which sets forth the services to be provided to meet the reasonable efforts standard for children placed out of the home, see §§ 19-1-103(89), 19-3-100.5, C.R.S.2004, is the only provision of the Code that addresses visitation. Pursuant to that statute, visitation services for parents with children in out-of-home placements must be provided as determined necessary and appropriate by a case assessment and the individual case plan. Section 19-3-208(1), (2)(b)(IV), C.R.S.2004; see § 19-3-209, C.R.S.2004.
In determining whether visitation services are necessary and appropriate, the health and safety of the child are the paramount concerns. Section 19-1-103(89), 19-3-100.5(2), C.R.S.2004; see §§ 19-1-103(10) (providing that an appropriate treatment plan must relate to the child's needs), 19-3-208(2)(a)(I), C.R.S.2004 (requiring that services be designed to promote the immediate health and safety of children). Questions concerning the child's health and safety, like those concerning a child's best interests, are matters entrusted to the sound discretion of the trial court. See L.A.G. v. People in Interest of A.A.G., supra, 912 P.2d at 1391.
Thus, we conclude that the Code requires the trial court itself to make decisions regarding visitation, and it may not delegate *1071 this function to third parties. See In re D.R.V-A., 976 P.2d 881 (Colo.App.1999) (holding that parenting time decisions in paternity actions, which are governed by the UDMA, may not be delegated to third parties); In re Marriage of McNamara, 962 P.2d 330 (Colo.App.1998) (holding that, under the UDMA, decisions regarding parenting time must be made by the trial court and may not be delegated to third parties).
We recognize that, in the context of dependency and neglect cases, as a practical matter, the court and the parties must utilize the services of experts, such as therapists, and rely on their recommendations concerning a variety of issues, including visitation plans. While it is appropriate for a court to order such experts to devise plans and make appropriate recommendations as to visitation, such orders should always be subject to the continuing supervision and review by the trial court, which, in the final analysis, retains ultimate decision-making authority in the case.
Here, although the trial court's January 7 and 29, 2004 orders, in particular, appear to delegate to the therapists certain responsibilities with respect to a visitation plan for mother, the record shows that, in fact, the trial court continually maintained supervision over the visitation issue and, on several occasions, reviewed the issue and decided whether visitation by mother was appropriate. Visitation was suspended four months before the termination hearing began. After that time, resumption of visitation was frequently addressed by the court during periodic review hearings and upon mother's motions. At the beginning of the termination hearing, the issue was fully litigated, and the trial court found, on supporting evidence, that visitation was not in the children's best interests. Four months later, while the termination hearing was being continued, the trial court held an evidentiary hearing and again declined mother's request to resume visitation.
Because mother sought and received multiple hearings on the issue of visitation, we conclude that the trial court's orders with respect to the therapists did not affect any of mother's substantial rights, see C.A.R. 35(e); C.R.C.P. 61; People in Interest of D.C., supra, 851 P.2d at 294, and do not require reversal of the termination judgment.

II.
Mother also contends the evidence was insufficient to support the criteria for termination. Asserting that establishment and maintenance of a nurturing, stable bond with the children was essential to reunification, she argues that the treatment plan was rendered inappropriate by the trial court's delegation of its responsibility to determine when visits could resume. She further argues that, without visits, she was unable to demonstrate her improved parenting skills, and, therefore, the trial court could not find that the treatment plan was unsuccessful or that her conduct or condition was unlikely to change within a reasonable time. We disagree.
To terminate the parent-child legal relationship pursuant to § 19-3-604(1)(c), clear and convincing evidence must establish that the child has been adjudicated dependent or neglected; that an appropriate treatment plan, approved by the trial court, has not been complied with by the parent or has not been successful in rehabilitating the parent; that the parent is unfit; and that the parent's conduct or condition is unlikely to change within a reasonable time. People in Interest of A.M.D., 648 P.2d 625 (Colo.1982).
A treatment plan is appropriate if it "is reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time" and "relates to the child's needs." Section 19-1-103(10). Appropriateness is measured by the likelihood of success in reuniting the family, which must be assessed in light of the facts existing at the time of the plan's approval. People in Interest of M.M., 726 P.2d 1108 (Colo.1986).
A treatment plan is successful if it corrects or improves the parent's conduct or condition or renders the parent fit. People in Interest of C.A.K., 652 P.2d 603 (Colo.1982). In cases concerning a child under the age of six, reasonable compliance with or success of a treatment plan cannot be found if

*1072 [t]he parent exhibits the same problems addressed in the treatment plan without adequate improvement, including but not limited to improvement in the relationship with the child, and is unable or unwilling to provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions.
Section 19-3-604(1)(c)(I)(B), C.R.S.2004.
In determining whether a parent's conduct or condition is unlikely to change within a reasonable time, a trial court may consider whether any change has occurred during the pendency of the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. People in Interest of A.N.W., 976 P.2d 365 (Colo.App. 1999).
A reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. People in Interest of D.L.C., 70 P.3d 584 (Colo.App. 2003); see § 19-3-604(3), C.R.S.2004. In cases concerning a child under the age of six, the child must be placed in a permanent home within twelve months of his or her initial out-of-home placement, unless the trial court finds that a permanent home is not in the child's best interests at that time. Sections 19-1-123, 19-3-703, C.R.S.2004.
The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. People in Interest of C.A.K., supra.
Here, as discussed above, even though the trial court entered orders directing the therapists to devise a visitation plan, it frequently reviewed the issue, determining each time that visits were not in the children's best interests. Accordingly, such orders did not render the treatment plan inappropriate.
Further, the record reveals that mother denied any parenting problems and resisted input from the therapeutic visit supervisors. When visits were suspended, mother had made no sustained improvement in her parenting ability and did not interact well with the children. Instead of facilitating a relationship between mother and the children, the visits were emotionally stressful and interfered with the children's therapeutic progress.
Although visitation was not resumed between mother and the children here, the record reveals that therapeutic visitation with another child, A.E.C., was reinstated in March 2004. See People in Interest of D.L.R., 638 P.2d 39 (Colo.1981)(holding that a trial court may properly consider the treatment accorded other children in determining whether the child before it is dependent or neglected). During these visits, mother failed to demonstrate an ability to recognize or meet the child's needs and was unable to incorporate the parenting skills taught by the therapeutic visit supervisor. The supervisor, a licensed clinical social worker who was qualified as an expert in parent-child interactions, therapeutic visitation, and child protection, testified that mother posed a risk to the child's physical and emotional development and recommended termination of her parental rights.
The record further reveals that mother received intensive rehabilitative services for eighteen months and made little, if any, progress. Because of this lack of progress, the caseworker believed that mother's conduct or condition would not change within a reasonable time to meet the children's emotional and developmental needs.
At the time of the termination hearing, the youngest child had been placed out of the home for more than eighteen months, and the three older children, for thirteen months. Their therapists testified that as a result of the trauma experienced while in mother's care, the children had extreme emotional problems, which were exacerbated by contact with mother. They believed that termination of mother's parental rights was in the children's best interests.
Thus, the trial court's findings that the treatment plan was appropriate, but not successful, and that mother's conduct or condition was unlikely to change within a reasonable time, are supported by the record. Therefore, they will not be disturbed on review. *1073 See People in Interest of C.A.K., supra.
The judgment is affirmed.
Judge CASEBOLT and Judge RUSSEL concur.