The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 9, 2019

## 2020COA6

## No. 19CA0037, *Peo in the Interest of NGG* — Children's Code — Juvenile Court — Dependency and Neglect; Constitutional Law — Fourteenth Amendment — Due Process

In this dependency and neglect case, a division of the court of appeals considers whether the legal presumption that a parent is acting or will act in his or her child's best interests may be restored to a parent after it has been removed by an order adjudicating the child dependent and neglected. The division concludes that the presumption is restored when the juvenile court subsequently determines that the parent has successfully complied with a treatment plan and is able to safely parent the child.

Because the juvenile court in this case did not accord mother the presumption when it ordered grandparent visitation as part of the judgment allocating parental responsibilities for the children,

we reverse the judgment and remand the case for a new hearing. The division also concludes that the judgment must be reversed because the relocation provision, which allows mother to relocate with the children without father's agreement if he is incarcerated, violates the governing statute and is premature.

COLORADO COURT OF APPEALS **2020COA6**

Court of Appeals No. 19CA0037
Mesa County District Court No. 16JV217
Honorable Valerie J. Robison, Judge

The People of the State of Colorado,

Appellee,

In the Interest of N.G.G., A.R.G., and S.D.G., Children,

and Concerning J.G., V.M.,

Appellants,

and H.B.,

Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE ROMÁN
Grove and Rothenberg*, JJ., concur

Announced January 9, 2019

J. Patrick Coleman, County Attorney, Jeremy Savage, Chief Deputy County
Attorney, Katherine A. Barnes, Assistant County Attorney, Grand Junction,
Colorado, for Appellee

Melinda Guthrie, Guardian Ad Litem

Susan C. Baker, Office of Respondent Parents' Counsel, El Prado, New Mexico,
for Appellant J.G.

Barbara A. Snow, Longmont, Colorado, for Appellant V.M.

Gregory J. Mueller, Grand Junction, Colorado, for Appellant H.B.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1 In this dependency and neglect proceeding, V.M. (mother) and J.G. (father) appeal the juvenile court's judgment allocating parental responsibilities for their children, N.G.G., A.R.G. and S.D.G.

¶ 2 Where a juvenile court adjudicates a child dependent and neglected, thereby removing the legal presumption that a parent is acting or will act in the child's best interests, is the presumption restored where the court later finds that the parent has successfully complied with a treatment plan and is able to safely parent the child? We conclude that the answer is "yes." We also conclude that an order permitting a parent to relocate with a child without notifying the other parent, if the other parent is incarcerated, violates the governing statute. For these reasons, we reverse the judgment and remand the case for further proceedings.

I. Dependency and Neglect Case

¶ 3 In July 2016, the Mesa County Department of Human Services (Department) initiated a dependency and neglect case based on concerns that the paternal grandmother, H.B., who was then the children's primary legal custodian, had provided inadequate care. The juvenile court placed the children, then ages six, five, and

1

three, in mother's custody under the protective supervision of the Department.

¶ 4     Mother and father admitted that the children were dependent and neglected through no fault of the parents.

¶ 5     The court also granted the grandmother's request to be made a respondent and contest the allegations in the petition. However, a jury later determined that the grandmother had mistreated or abused the children or allowed another to do so; that they lacked proper parental care because of the grandmother's acts or omissions; that their environment was injurious to their welfare based on the grandmother's acts or failure to act; and that they were without proper care or not domiciled with a parent through no fault of the grandmother.

¶ 6     Based on that verdict, the court adjudicated the children dependent and neglected based upon the grandmother's care. It also adopted a treatment plan for the parents and the grandmother.

¶ 7     The Department filed motions seeking a permanent allocation of parental responsibilities (APR) for the children to mother, and the juvenile court held a hearing on the Department's request. After considering the evidence and the parties' written arguments, the

juvenile court determined that mother had successfully complied with her treatment plan and issued a permanent APR judgment granting mother sole decision-making authority for the children and primary parenting time.  The court also

- granted father supervised parenting time;

- awarded the grandmother supervised visitation and provided for a possible transition to unsupervised visitation;

- required mother to notify the grandmother of the children's school-organized extracurricular activities;

- required mother and the grandmother to enroll in and complete a high-conflict parenting class; and

- granted mother permission to relocate with the children under certain circumstances.

¶ 8      The juvenile court certified the APR judgment into the parties' pre-existing domestic relations case.

## II.  Mother's Appeal

¶ 9      Mother contends that the juvenile court denied her substantive due process by ordering grandparent visitation and denying her the discretion to determine the amount of time the grandmother spent with the children without according mother the

presumption that her decisions were in the children's best interests, as required by *Troxel v. Granville*, 530 U.S. 57, 66 (2000).  We agree.

## A.  Governing Law

¶ 10     We will not disturb a juvenile court's factual findings when they are supported by the record.  *People in Interest of A.J.L.*, 243 P.3d 244, 250 (Colo. 2010).  However, whether the court applied the correct legal standard in making its findings is a question of law that we review de novo.  *In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.

¶ 11     The juvenile court has exclusive authority to determine the legal custody of a child who comes within its jurisdiction.  § 19-1-104(1)(c), C.R.S. 2019; *L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1389 (Colo. 1996).  When determining custody or allocating parental responsibilities, the court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2019.  *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005).  These purposes include the following:

- securing for each child the care and guidance, preferably in his or her own home, that will best serve the child's welfare and the interests of society;

- preserving and strengthening family ties whenever possible, including improving the home environment;

- removing a child from the custody of his or her parents only when the child's welfare and safety or the protection of the public would otherwise be endangered, and for the courts to proceed with all possible speed to a legal determination that will serve the child's best interests; and

- securing for any child removed from the custody of his or her parents the necessary care, guidance, and discipline to assist the child in becoming a responsible and productive member of society.

§ 19-1-102(1)(a)-(d).

¶ 12    The purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served. *L.G. v. People*, 890 P.2d 647, 654 (Colo. 1995); *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011); *see also L.A.G.*, 912 P.2d at 1391.

¶ 13    The Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions

concerning the care, custody, and control of their children. *Troxel*, 530 U.S. at 66.

¶ 14   In *Troxel*, the Supreme Court recognized that fit parents — that is, parents who are adequately caring for their children — are presumed to act in the children's best interests. *Id.* at 68-69. When a fit parent's parenting decision "becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination" regarding the child's best interests. *Id.* at 70; *see In re Adoption of C.A.*, 137 P.3d 318, 324 (Colo. 2006).

¶ 15   Thus, in proceedings between a parent and nonparent, the parent is entitled to a constitutional presumption that the parent acts in the child's best interests. *Troxel*, 530 U.S. at 68; *In re Parental Responsibilities Concerning B.J.*, 242 P.3d 1128, 1134 (Colo. 2010); *C.A.*, 137 P.3d at 327. This includes the parent's determination that he or she should have sole discretion to determine when a nonparent may visit the child. *See C.A.*, 137 P.3d at 328.

¶ 16   The presumption may only be rebutted if the nonparent shows by clear and convincing evidence that the parent's determination is not in the child's best interests and the nonparent's request is in

the child's best interests. *B.J.*, 242 P.3d at 1134; *C.A.*, 137 P.3d at 322, 327-28. Furthermore, the court must also identify special factors that support entering an order contrary to the parent's wishes. *B.J.*, 242 P.3d at 1130, 1134; *C.A.*, 137 P.3d at 322, 328; *see In Interest of C.T.G.*, 179 P.3d 213, 226 (Colo. App. 2007) (overturning visitation order based on *Troxel* when nonparent failed to present evidence of special circumstances to justify an order contrary to the parents' wishes).

### B.  Analysis

#### 1.  Applicability of *Troxel* Presumption

¶ 17    A parent subject to a dependency and neglect case is not always entitled to the presumption that he or she is acting in his or her child's best interests. Rather, the presumption is limited to a parent who is adequately caring for his or her child. *Troxel*, 530 U.S. at 68-69. Thus, an order adjudicating a child dependent and neglected overcomes the presumption that a parent is acting or will act in the child's best interests. *People in Interest of N.G.*, 2012 COA 131, ¶ 33.

¶ 18    Here, following the adjudication, the juvenile court found that mother had complied with her treatment plan, and that she was

7

able to safely parent the children. The court then awarded mother primary parenting time and sole decision-making authority for the children.

¶ 19    Under these circumstances, we conclude that mother was entitled to the *Troxel* presumption that she was acting in the children's best interests.

## 2.  The Record

¶ 20    During the APR hearing, mother agreed that the grandmother should have supervised time with the children and the opportunity to attend the children's events.  However, mother requested the discretion to determine when such contact with the grandmother would occur.  She thus maintained that she was entitled to the *Troxel* presumption that her decisions would be in the children's best interests.  Mother cited several reasons for needing this discretion, including that

- she and the grandmother did not have a harmonious relationship;

- the grandmother had stated her intention to harass, threaten, and stalk mother "until the rest [sic] of the earth," and mother was concerned that she would require police assistance to

force grandmother to return the children, as this had occurred in the past; and

- she was concerned that the grandmother would not keep the children safe from father.

¶ 21 The Department and the children's guardian ad litem supported mother's position at the hearing that she should have the discretion to determine when the grandmother's visitation with the children should occur. A caseworker expressed her opinion that mother would promote a healthy relationship between the grandmother and the children, and another caseworker expressed her concern that, if mother were required to have contact with the grandmother after the case was closed, it would result in "[a] constant battle with [the grandmother] trying to take [mother's] children away from her." None of the parties at the hearing suggested there was a need for mother and the grandmother to enroll in a parenting class together. Indeed, mother had successfully completed a parenting class during the case.

¶ 22 The court nevertheless ordered the grandmother visitation without applying the *Troxel* presumption. It stated its concern that mother would cut off visitation with the grandmother and relied on

evidence that (1) the grandmother did well with the children during her supervised visits; (2) the children loved her; and (3) it would be healthy for them to continue to have contact with her.

¶ 23     Because the court did not cite any other factors that justified interfering with mother's discretion and did not apply the correct legal standard set forth above, we reverse the judgment in its entirety and remand the case for a new hearing.  On remand, the court must (1) apply the *Troxel* presumption in favor of mother's determination regarding the grandmother's visitation and notification to her of extracurricular activities; (2) determine whether the grandmother has rebutted the *Troxel* presumption by showing through *clear and convincing evidence* that mother should not be allowed ordinary parental discretion that would allow her to decide visits; and (3) place the burden on the grandmother to show that her time with the children and the other impositions on mother's parenting time are in the children's best interests.  *See B.J.*, 242 P.3d at 1130; *C.A.*, 137 P.3d at 322.  Before the court may order such grandparenting time or any other impositions against mother's wishes, the court must identify special factors that justify interfering with mother's discretion in making her determinations.

*See B.J.*, 242 P.3d at 1130. Because the record does not show a basis for requiring mother to complete a joint parenting class, that provision cannot stand.

### III. Father's Appeal

¶ 24    Father contends that the juvenile court erred by permitting mother to relocate with the children without his agreement if he is incarcerated. We conclude the order permitting relocation is premature and contrary to the governing statute. Therefore, we agree with father that it must be reversed.

### A. Governing Law

¶ 25    We review de novo whether the juvenile court applied the correct legal standard. *See B.R.D.*, ¶ 15.

¶ 26    The APR judgment entered by the juvenile court was certified into a domestic relations case. Therefore, we apply the provisions under the Uniform Dissolution of Marriage Act (UDMA). *See* § 19-1-104(5)-(6) (addressing procedure for certifying a custody award or an order allocating parental responsibilities between a dissolution of marriage action and the juvenile court).

¶ 27    Section 14-10-129(1)(a)(II), (2)(c), C.R.S. 2019, of the UDMA provides that a party intending to relocate with a child to a

11

residence that substantially changes the geographical ties between the child and the other party shall provide the other party with written notice as soon as practicable of the intent to relocate, the location where the party intends to reside, the reason for the relocation, and a proposed revised parenting time plan.

¶ 28   The statute further provides that the court, in determining whether the modification of parenting time is in the best interests of the child, shall take into account all relevant factors, including those enumerated in paragraph (c) of subsection (2).  § 14-10-129(1)(a)(II).  These factors include (1) the reasons why the party wishes to relocate with the child; (2) the reasons why the opposing party is objecting to the proposed relocation; (3) the history and quality of each party's relationship with the child since any previous parenting time order; (4) the educational opportunities for the child at the existing location and at the proposed new location; (5) the presence or absence of extended family at the existing location and at the proposed new location; (6) any advantages of the child remaining with the primary caregiver; (7) the anticipated impact of the move on the child; (8) whether the court will be able to fashion a reasonable parenting time schedule if the change requested is

permitted; and (9) any other relevant factors bearing on the child's best interests. § 14-10-129(2)(c). The court must also consider the best interests factors in section 14-10-124(1.5)(a), C.R.S. 2019. *In re Marriage of Ciesluk*, 113 P.3d 135, 140 (Colo. 2005).

¶ 29    Importantly, the court's determination of a child's best interests must be based on the circumstances existing at the time of the proceeding. *See In re Parental Responsibilities Concerning M.W.*, 2012 COA 162, ¶ 27.

## B. The Relocation Provision

¶ 30    Mother testified that she had no plans to move with the children. Nevertheless, the court — perhaps viewing it as a matter of judicial economy — included the following provision in its judgment permitting the children's removal from Mesa County or the State of Colorado:

> If [mother] desires to relocate with the children outside of Mesa County, she must notify [father]. If [father] agrees to the relocation, the agreement must be reduced to writing, including any change in parenting time, and file the agreement with the [c]ourt. [Sic.] If [father] cannot be located after diligent efforts by [mother] over the course of at least two months or if [father] is incarcerated, [mother] may relocate without an agreement. If [father] is located and not incarcerated and no

agreement is reached, [mother] may not relocate with the children. No relocation with the children outside of Mesa County shall be allowed unless [father's] parenting time is commensurate with the parenting time he was accessing six months prior to relocating with no increase in the costs associated with parenting time for the non-relocating party, or a [c]ourt [o]rder is in place authorizing the relocation.

¶ 31   The court's order did not afford father a meaningful opportunity to be heard, *see Patterson v. Cronin*, 650 P.2d 531, 537 (Colo. 1982), and violated the requirement that the determination whether relocation is appropriate must be based on the circumstances existing at the time of the child's proposed relocation. *See M.W.*, ¶ 27. Accordingly, the court must reconsider the relocation provision of the APR judgment.

## IV.  Conclusion

¶ 32   The judgment is reversed, and the case is remanded to the juvenile court for further proceedings in accordance with the views expressed in this opinion.

JUDGE GROVE and JUDGE ROTHENBERG concur.

14