24CA0446 Peo in Interest of RM 02-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0446
Arapahoe County District Court No. 21JV562
Honorable Victoria Klingensmith, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of R.M. and S.M., Children,

and Concerning T.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division A
Opinion by JUSTICE MARTINEZ*
Román, C.J., and Taubman*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

---

Ronald A. Carl, County Attorney, Kiley Schaumleffel, Assistant County Attorney, Aurora, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    In this dependency and neglect action, T.M. (father) appeals the juvenile court's judgment allocating parental responsibilities for his children, R.M. and S.M., to K.N. (mother).  We affirm.

## I.    Background

¶ 2    This case originally began as a domestic relations case stemming from a contentious divorce between father and mother. Concerns arose after the Arapahoe County Department of Human Services (Department) received multiple referrals alleging one of the minor children had disclosed sexual abuse by father.  The Department ultimately closed those referrals after concluding that mother was sufficiently protective of the children and had filed a motion to restrict parenting time into the domestic relations case. No criminal charges were filed regarding the allegations.

¶ 3    After the domestic relations court ordered the children to resume unsupervised parenting time with father, one of the children allegedly became so emotionally distraught that she attempted suicide, reported suicidal ideation, and threatened to continue to attempt suicide if she had to visit father without supervision.  Based on these concerns, the Department initiated a

petition in dependency and neglect and the juvenile court assumed jurisdiction.

¶ 4     The parents admitted the allegations in the petition and the juvenile court adjudicated the children dependent and neglected. The juvenile court adopted treatment plans for both parents.

¶ 5     Shortly before the case opened, father had two supervised parenting time visits with the children, which raised no safety concerns.  Later, teachers reported that R.M., who had been a model student, was having behavioral problems in class. Eventually, parenting time was suspended and the children had no further visits with father throughout the case due to concerns for their emotional and physical well-being, as well as their refusal to attend.

¶ 6     After the case had been open for nearly two and a half years, the children's guardian ad litem (GAL) and mother moved for an allocation of parental responsibilities (APR).  At the hearing, all parties agreed that parenting responsibilities should be allocated to mother and to submit the remaining issue about parenting time for father to the juvenile court on the record without further evidence.

¶ 7     After hearing the arguments of the attorneys, the juvenile court found the Department had made reasonable efforts to reunite the children with father and that it was *not* in the best interests of the children to have parenting time with father *at this time.* The juvenile court allocated parenting responsibilities to mother but also ordered regular supervised parenting time with father *upon the consent* of the children.

## II.     Father's Arguments

¶ 8     Father argues the juvenile court erred by finding the Department made reasonable efforts to reunite him with his children and by limiting parenting time based upon the children's consent. We disagree.

### A.     Standard of Review and Applicable Law

¶ 9     When allocating parental responsibilities in a dependency and neglect proceeding, a juvenile court must consider the legislative purposes of the Colorado Children's Code. *People in Interest of J.G.*, 2021 COA 47, ¶ 18. While the Children's Code does not prescribe any specific factors a court must consider in making an APR decision, the overriding purpose of the Code is to protect a child's welfare and safety by providing procedures to serve the child's best

interests.  *See* § 19-1-102, C.R.S. 2024; *People in Interest of A.S.L.*, 2022 COA 146, ¶ 12.  Thus, the court must allocate parental responsibilities in accordance with the child's best interests.  *See* § 19-3-507(1)(a), C.R.S. 2024.  A court may also consider the best interest factors found in section 14-10-124, C.R.S. 2024, of the Uniform Dissolution of Marriage Act (UDMA) but the court's focus must remain on the child's safety and protection and not on the parent's custodial interests.  *People in Interest of H.K.W.*, 2017 COA 70, ¶ 13.

¶ 10      An APR is within the juvenile court's discretion and will not be disturbed on review if the judgment is supported by competent evidence in the record.  *See People in Interest of A.M.K.*, 68 P.3d 563, 565 (Colo. App. 2003).  However, whether the juvenile court applied the correct legal standard in making its findings is a question of law that we review de novo.  *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

¶ 11      The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are matters within the juvenile

court's discretion. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.

## B. Reasonable Efforts

### 1. Preservation

¶ 12    The Department and GAL first assert that father did not preserve this claim for appeal. We need not decide this issue because, even if we assume father preserved his claim, we discern no reversible error.

### 2. Application of Reasonable Efforts Requirements

¶ 13    Father asserts the Department owed him a duty of reasonable efforts to reunify the family because when the children were placed with mother, they were placed out of *his* home. He additionally argues that legislative intent and the overarching purpose of a treatment plan support his assertion that the Department had a duty to provide reasonable efforts. The Department and GAL argue that because father's parental rights were not terminated, the reasonable efforts requirement of section 19-3-604(2)(h), C.R.S. 2024, does not apply. *See A.S.L.*, ¶ 17. They further contend that where, as here, the juvenile court resolves the case through an APR between the parents, a showing of reasonable efforts is not

required.  *See* § 19-3-100.5(1), C.R.S. 2024 (The state is required to "make a commitment to make 'reasonable efforts' to prevent the placement of abused and neglected children *out of the home.*") (emphasis added).  *See A.S.L.,* ¶ 20 ("[T]he Department has a statutory obligation to provide reasonable efforts to reunify the family and avoid out-of-home placement of the child . . . even when the juvenile court, in lieu of terminating rights, enters an APR *to a nonparent.*") (emphasis added).

¶ 14     The juvenile court did not rely on the argument that the Department and the GAL make but found that the Department had in fact made reasonable efforts.  In our view, the juvenile court's finding of reasonable efforts is critical to the juvenile court's parenting time decision, for reasons we discuss in the next section.  Thus, we consider whether that finding is supported by the evidence.  Because we conclude that the juvenile court's finding was not an abuse of its discretion, we need not address the argument of the Department and the GAL that such efforts were not required.

3.    Applicable Law

¶ 15    "Reasonable efforts" means the "exercise of diligence and care" to reunify parents with their children.  § 19-1-103(114), C.R.S. 2024.

¶ 16    Services provided in accordance with section 19-3-208, C.R.S. 2024, satisfy the reasonable efforts standard.  § 19-1-103(114). Among the services required under section 19-3-208 are screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; and family time and placement services.  § 19-3-208(2)(b).

¶ 17    The juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan."  *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.

¶ 18    Whether a department of human services satisfied its obligation to provide reasonable efforts is a mixed question of fact and law.  *A.S.L.*, ¶ 8.  We review the juvenile court's factual findings

for clear error and review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation. *Id.*

### 4. Discussion

¶ 19 Father argues that the Department failed to make reasonable efforts to reunify the family when it did not facilitate reintegration therapy. We disagree.

¶ 20 As relevant here, the juvenile court found "that the Department [had] made reasonable efforts in attempting to comply with the court order requiring reintegration therapy." The juvenile court further found that "the Department made reasonable efforts to try and attempt to find a provider who would provide reintegration therapy in this case."

¶ 21 The record reveals it was a lack of available providers, as well as the children's refusal to attend parenting time, that prevented the Department from providing reintegration therapy, not a lack of reasonable efforts. Before the APR hearing, the juvenile court had ordered a reunification plan and reintegration therapy between father and the children. At the APR hearing, testimony revealed the Department struggled to find a reintegration therapist willing to

8

work on this case. The caseworker supervisor said she and the caseworker contacted and made referrals to "every provider [the Department] became aware of" to try and find a therapist who would work with the family. Ultimately, all of the providers declined. Some of those providers noted they would not recommend reintegration therapy at the time because they believed forcing the children to engage with father would cause trauma.

¶ 22 Father's expert witness in forensic and clinical psychology testified that it can be difficult to find a qualified provider for reintegration therapy. She noted that an inability to find such a therapist reflected the difficulty in locating such a provider, not a lack of reasonable efforts on the Department's behalf. She further stated that if a child refuses to engage in therapy, forcing that child to attend therapy could potentially cause more harm to the child.

¶ 23 Based on the totality of the circumstances, we discern no reversible error in the juvenile court's finding that the Department made reasonable efforts to provide reintegration therapy. *My.K.M.*, ¶ 33.

### C. Parenting Time Upon Consent of the Children

#### 1. Preservation

¶ 24    The Department and GAL assert that father failed to preserve his parenting time argument because he did not offer evidence at the APR hearing and thus waived his right to a contested hearing. We disagree.

¶ 25    While discussing parenting time at the APR hearing, father's counsel specifically stated, "certainly we do object to the [c]ourt issuing an order that puts [parenting time] entirely in the choice of the children." This objection was sufficient to preserve this issue for review. *See Vaccaro v. Am. Fam. Ins. Grp.*, 2012 COA 9M, ¶ 52 ("An objection is sufficient so long as it calls the court's attention to the specific point it addresses."); *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010) ("[T]o preserve [an] issue for appeal[,] all that was needed was that the issue be brought to the attention of the trial court and that the court be given an opportunity to rule on it.").

¶ 26    The Department and GAL further assert that, without a full evidentiary hearing, "the children did not have a meaningful opportunity to be heard" regarding their positions on parenting time. They argue that, had an evidentiary APR hearing occurred, they would have presented more evidence about the harm it would

10

cause the children should they start contact with father before they were ready to do so. Thus, they assert, review of father's claim violates the children's due process rights "because there is no record" on which the children can base their response.

¶ 27 These arguments do not take into account that the Department and the GAL could have presented evidence at the APR hearing. Additionally, the juvenile court took judicial notice of the prior findings, hearings, and orders — all of which are part of the record on appeal — including a prior in camera review where the court heard the children's positions. We conclude father sufficiently preserved this issue for appeal.

### 2. Additional Background

¶ 28 In addressing father's argument, we note that safety concerns for the children in this case were significant to the juvenile court. The record reveals that the children consistently reported being fearful of father, and that the concerns were particularly extreme for R.M.

¶ 29 Throughout the case, R.M. repeatedly reported to mother, her teacher, the juvenile court appointed special advocate (CASA) worker, the caseworker, and the GAL that she would kill herself if

forced to attend parenting time with father. Mother reported having to hide the knives in the home because R.M. knew where they were and had made repeated statements that she would "stab" herself if the court ordered parenting time. R.M. insisted to the caseworker that she was "serious" and "would rather go to [h]eaven" than see father again. At one point, when R.M. was told parenting time with father would resume, R.M. attempted suicide, resulting in a hospitalization.

¶ 30    In addition to the threats of self-harm, R.M. told the caseworker that she would run away and take her younger brother with her if forced to attend parenting time. Ultimately, neither child wavered in their refusal to see father.

¶ 31    With that record, the juvenile court found that parenting time with father "at this time is *not* in the children's best interests and that parenting time would impair the children's emotional and mental states." Although the history of the case also includes some evidence of parental alienation, the juvenile court focused on the potential harm to the children that could result from requiring parenting time with father. Moreover, there was no change in the children's adamant refusal to visit father after two and a half years.

12

Thus, the juvenile court noted it had significant apprehension about forcing the children into any parenting time but ordered that father "may have weekly supervised [parenting] [t]ime upon consent of the minor children."

### 3.    Discussion

¶ 32    Father does not challenge the juvenile court's best interests findings.  Rather, he argues that the court improperly delegated the parenting time decision making to the children.

¶ 33    We are aware that prior divisions of this court have held that a court may not delegate decisions regarding visitation to third parties.  *See People in Interest of E.S.*, 2021 COA 79, ¶ 22; *People in Interest of D.G.*, 140 P.3d 299, 304-05 (Colo. App. 2006); *People in Interest of B.C.*, 122 P.3d 1067, 1070-71 (Colo. App. 2005). However, these cases, which did not involve a delegation of decisions to the children, are distinguishable not merely because the children are not third parties, but for reasons discussed below.

¶ 34    In *D.G.*, the division concluded that the juvenile court erred when it found the Department improperly delegated visitation decisions to the caseworker, the CASA, the GAL, and the children's therapist.  *D.G.*, 140 P.3d at 305.  There, the professionals involved

improperly denied visitation because they believed it was more important for the children to develop strong ties with the foster parents. *Id.* Unlike here, there were no safety concerns related to allowing or denying parenting time.

¶ 35 In *E.S.*, the division concluded that the juvenile court erred by allowing a county department to make parenting time decisions. *E.S.*, ¶ 22. Unlike here, *E.S.* addressed a blanket department policy that banned *any* parent from participating in visitation if the parent had outstanding warrants, regardless of safety concerns or whether parenting time was appropriate. *Id.*

¶ 36 The division in *B.C.* noted that a juvenile court cannot delegate parenting time decision-making authority to a third party in a dependency and neglect action. *B.C.*, 122 P.3d at 1069. However, *B.C.* acknowledged that while two orders issued by the juvenile court *appeared* to delegate visitation to a therapist, because visitation was frequently addressed by the court, and the court found visitation was not in the best interests of the children, the court maintained sufficient supervision over the issue of visitation. *Id.* at 1071.

¶ 37 Additionally, all three of the above-mentioned cases centered around a third party limiting or prohibiting parenting time when the court had previously authorized visits, unlike the case at instance. *Id.*; *E.S.*, ¶ 22; *D.G.*, 140 P.3d at 305. In this case, the juvenile court specifically found that time with father was not in the best interests of the children due to concerns for the safety of the children. As noted previously, father did not challenge this finding. Consistent with this finding, the court could not have ordered visitation until those concerns were resolved or managed. Further, the court had found that the Department had made reasonable efforts to find a counselor or therapist who would attempt reintegration therapy between father and these resisting children, but was unable to locate one. Instead, the juvenile court approved the parties agreement for an APR and ordered there would be no visits *at this time.* The juvenile court then allowed that if the children consented, there could be supervised visitation with father, thus returning jurisdiction to the domestic relations court.

¶ 38 We recognize that there may be little or no distinction between denying visitation but allowing the children to consent to supervised parenting time despite concerns for their safety and

15

delegating decision-making authority to the children. *But see VanSkiver v. VanSkiver*, 930 N.W.2d 569, 575-76 (Nebraska Supreme Court found no improper delegation of judicial authority to the children in a parenting plan that awarded parenting time to father, but allowed the children to decline visits with father if he acted in a threatening manner.) Here, the juvenile court left open the possibility that while parenting time was not appropriate "*at this time*," if the children wanted to resume contact with father at some time in the future, parenting time might become appropriate because the serious safety concerns could be managed with supervision of any visits.

¶ 39 Because the safety concern here is the potential for child self-harm, whether that safety concern becomes manageable depends entirely on the children. The juvenile court's order recognizes that if the children later willingly consent to parenting time with father, the safety concerns surrounding the potential for child self-harm when faced with parenting time diminish.

¶ 40 The juvenile court's findings about these specific safety concerns, together with the apparent lack of alternatives and the court's approval of the agreement of the parties to an APR, alleviate

16

reservations we have about the order permitting visitation only with the consent of the children. Because the judgment does not violate the Children's Code and there is record support for the juvenile court's findings, we discern no basis for reversal. *See A.S.L.*, ¶ 26 (affirming the court's decision limiting mother's parenting time because the record supported a finding that it was in the child's best interests).

### III. Disposition

¶ 41 The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE TAUBMAN concur.