24CA2225 Peo in Interest of LAB 07-10-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA2225
Montrose County District Court No. 20JV99
Honorable D. Cory Jackson, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of L.A.B., a Child,

and Concerning T.R.,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE BROWN
Dunn and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 10, 2025

---

Julie R. Andress, County Attorney, Montrose, Colorado, for Appellee

Robert G. Tweedell, Counsel for Youth, Delta, Colorado, for L.A.B.

Ainsley Bochniak, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, T.R. (mother) appeals the judgment allocating parental responsibilities of L.A.B. (the child) to T.B. (father).  We affirm.

## I.    Background

¶ 2    The Montrose County Department of Health and Human Services opened this case because the child's paternal grandmother, who was the child's guardian, was killed and no other family members were available to care for the child.  The Department alleged that it was trying to secure a psychiatric placement for the eleven-year-old child so he could receive treatment.  The juvenile court adjudicated the child dependent and neglected and adopted treatment plans for the parents.  Father was incarcerated when the case opened but was released from prison four months later.

¶ 3    Shortly after the case opened, the child was detained at Grand Mesa Youth Services Center (GMYS) in connection with a juvenile delinquency case based on his alleged involvement in his grandmother's death.  Early in his detention, the child was deemed incompetent but had to wait until he turned twelve to be transferred to the Colorado Mental Health Hospital in Pueblo to

receive competency restoration services there. After his competency was restored, he was transferred back to GMYS. The child later pleaded guilty to manslaughter in connection with his grandmother's death and served a one-year sentence at GMYS.

¶ 4     While the child was detained, he had telephone and virtual visits with both parents, although mother's visits had to be supervised and were suspended on more than one occasion based on concerns about her inappropriate behavior. About three and a half years after the case opened, the child was released from GMYS into father's care. When that happened, the child refused further visits with mother.

¶ 5     The Department moved for an allocation of parental responsibilities (APR) to father, which father and the child's Counsel for Youth supported. Mother, who opposed the Department's proposed APR, did not appear at the APR hearing, and the court denied her counsel's motion to continue. Following the evidentiary hearing, the court granted an APR to father and ordered that mother have supervised family time "with times to be arranged between the parties and [the child]."

## II. Motion to Continue

¶ 6    Mother contends that the juvenile court abused its discretion by denying her motion to continue.[1]  We disagree.

### A. Applicable Law and Standard of Review

¶ 7    The Colorado Children's Code directs courts to "proceed with all possible speed to a legal determination that will serve the best interests of the child." § 19-1-102(1)(c), C.R.S. 2024.  Thus, when ruling on a motion to continue, the court should balance the need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency. *People in Interest of R.J.B.*, 2021 COA 4, ¶ 11.

¶ 8    We review the juvenile court's ruling on a motion to continue for an abuse of discretion.  *Id.* at ¶ 13.  A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law.  *People in Interest of*

---

[1] Although mother asserts that she was denied due process in her statement of the issues presented and in the argument header for this section of her brief, she develops no such argument.  We decline to address this issue further.  *See People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (declining to address an appellate argument presented without supporting facts, specific argument, or supporting authorities).

*E.B.*, 2022 CO 55, ¶ 14. "The totality of the circumstances is relevant when determining whether the trial court committed an abuse of discretion by denying a continuance." *Id.* (quoting *People in Interest of D.J.P.*, 785 P.2d 129, 131 (Colo. 1990)).

## B. Additional Background

¶ 9 Mother moved to appear by Webex at the APR hearing nearly a month in advance. In that motion, her counsel indicated he "desire[d] to make arrangements" for her to appear by Webex at his office, which was much closer to her residence than the courthouse. The court granted her request.

¶ 10 When mother did not appear at the hearing, the court noted, "we had some others that were on the phone. I don't know if [mother] was previously on the phone. She may have dropped off." Mother's counsel indicated that mother's phone had been turned off the last several days, that he had hoped she would come to his office and appear by Webex or phone, and that he did not know if she was one of the individuals in the Webex waiting room. Her counsel then requested a continuance.

¶ 11 The court denied the request, noting that it "would not find" such a continuance to be in the child's best interests. The court

4

expressed concern that mother may not be able to appear at a continued hearing. It reasoned that (according to her counsel) mother had an opportunity to appear from counsel's office. And it noted that there were ways parties may appear that do not involve a phone, such as Webex.

## C. Analysis

¶ 12 On this record, we discern no abuse of discretion. The court's ruling reflects that it properly weighed the need for an expeditious resolution of the proceedings against counsel's suggested reason for the continuance and the child's need for permanency. *See R.J.B.*, ¶ 11. By the time of the APR hearing, the case had been open nearly four years, and the court was concerned about mother's ability to appear in the future if it continued the hearing.

¶ 13 Still, mother asserts that the parties knew it would be difficult for her to participate in the hearing without a reliable phone. But the court had granted her request to appear by Webex, and her counsel indicated his intent to have her appear by Webex at his office. Mother does not explain on appeal, nor did she explain to the juvenile court, how having an unreliable phone impacted her

ability to attend the APR hearing by Webex at her counsel's office or otherwise.

¶ 14  Notably, mother does not articulate any harm resulting from the court not continuing the APR hearing. Although mother argues that "it would have been in the child's best interests for the court to hear from [her] directly about her position regarding the APR order," she does not explain what her position would have been had she been present to testify. *See E.B.,* ¶ 22 ("Father failed to make any offer of proof indicating how he would have testified or what other evidence he would have offered had he been present, so 'we are unable to discern that the termination proceedings would have been affected in any appreciable way' by his testimony." (quoting *People in Interest of C.G.,* 885 P.2d 355, 358 (Colo. App. 1994))). Accordingly, we conclude that the court did not abuse its discretion by denying mother's continuance motion.

### III.    Allocation of Parental Responsibilities

¶ 15    Mother next contends that the court abused its discretion by allocating parental responsibilities to father.[2]  We disagree.

### A.    Applicable Law and Standard of Review

¶ 16    When allocating parental responsibilities in a dependency and neglect proceeding, the court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2024.  *People in Interest of J.G.*, 2021 COA 47, ¶ 18.  The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served.  *Id.* at ¶ 19.  Therefore, the court must allocate parental responsibilities in accordance with the child's best interests.  *People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011); *see* § 19-3-507(1)(a), C.R.S. 2024.  While the court may consider the factors listed in the Uniform Dissolution of Marriage Act, section 14-10-124(1.5)(a), C.R.S. 2024, the focus must be on the protection

---

[2] In her statement of the issues presented, argument summary, and argument header for this section of her brief, mother also asserts that the court erroneously granted father and the child discretion to determine when mother's family time would occur.  Again, because mother fails to develop this argument, we decline to address it.  *See D.B-J.*, 89 P.3d at 531.

and safety of the child and not the parents' custodial interests. *People in Interest of H.K.W.*, 2017 COA 70, ¶ 13.

¶ 17 The allocation of parental responsibilities is a matter within the juvenile court's discretion. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15. The credibility of witnesses, the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the juvenile court's discretion. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). And when the juvenile court's findings have record support, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15. But whether the court applied the correct legal standard in making its findings is a question of law that we review de novo. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

B. Analysis

¶ 18 Mother contends that the court abused its discretion by allocating parental responsibilities to father, primarily because he was a registered sex offender. We are not persuaded.

¶ 19 The court allocated to father sole decision-making responsibility and all family time, except for mother's supervised visits, which were to occur at times arranged by the parties and the

child.  The court found that the child was doing well in father's care.  It found that mother was resistant to family time and, at the time of the hearing, the child was unwilling to participate in family time with her.  And it found that a "safety concern" existed related to the potentially disruptive nature of mother's visits.

¶ 20    The record evidence supports these findings:

- The caseworker, whose testimony the court found credible, opined that father complied with his treatment plan and that the child was safe and doing well in father's care.

- Mother's visits were sporadic due to being missed or suspended by GMYS.

- The caseworker observed "various concerns" during mother's visits, such as hearing "snorting in the bathroom during a visit."

- The caseworker opined that the child was having "significant behavioral issues after visits and related to visits" with mother and testified that the child refused further visits with her upon his release from GMYS.

- The caseworker opined that mother had not complied with her treatment plan.

- When outlining why she believed father should be granted an APR and mother should be granted only supervised family time, the caseworker cited, among other concerns, mother's "history of contact" with the child, "instability," and "drug abuse and how that affects . . . the safety of [the child]."

¶ 21 Because the court rested its determination on findings that enjoy record support, its resolution of the evidence is binding on review. *See B.R.D.*, ¶ 15. The court concluded that granting an APR primarily to father was in the child's best interests. On this record, we perceive no abuse of discretion. *See E.B.*, ¶ 14.

¶ 22 Still, mother contends that the court erred by entering the APR because father was a registered sex offender who "could relapse at any time." But to support this contention, she relies on testimony from a hearing other than the APR hearing, which we do not consider. *See Boulder Plaza Residential, LLC v. Summit Flooring, LLC*, 198 P.3d 1217, 1222 (Colo. App. 2008) (an appellate court will not consider evidence that a party failed to introduce at trial). She also claims that her involvement in the child's upbringing "protected him from future neglect by his father" but provides no

record citation to, nor can we locate, any such evidence. *See id*; *see also In re Marriage of McSoud*, 131 P.3d 1208, 1223 (Colo. App. 2006) ("Only facts appearing in the record can be reviewed [by an appellate court] . . . .").

¶ 23    True, the court found that the child's and father's "extraordinary" progress during the case was "somewhat delicate." But through the findings that followed, including its finding that mother's family time presented a safety concern for the child, the court appeared concerned that unsupervised family time with *mother* could disrupt the child's and father's progress. In any event, mother's contention — essentially that father "could relapse" and therefore should not be granted an APR — asks us to reweigh the evidence, which we cannot do. *See People in Interest of K.L.W.*, 2021 COA 56, ¶ 62 (we cannot reweigh the evidence or substitute our judgment for that of the juvenile court); *A.J.L.*, 243 P.3d at 249-50 ("[I]t is important to defer to the [juvenile] court, particularly when it hears contradictory testimony on material issues . . . .").

¶ 24    In sum, the record supports the juvenile court's findings, and its APR based on those findings was neither a misapplication of the

law nor manifestly arbitrary, unreasonable, or unfair. Accordingly, the court did not abuse its discretion. *See E.B.,* ¶ 14; *B.R.D.,* ¶ 15.

## IV. Disposition

¶ 25 The judgment is affirmed.

JUDGE DUNN and JUDGE SCHOCK concur.