25CA0180 Peo in Interest of AGK 08-21-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0180
Summit County District Court No. 22JV30005
Honorable Reed W. Owens, Judge

---

The People of the State of Colorado,

Petitioner,

In the Interest of A.G.K., a Child,

and Concerning K.C.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE WELLING
Grove and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

---

No Appearance for Petitioner

Jenna L. Mazzucca, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, K.C. (mother) appeals the juvenile court's judgment allocating parental responsibilities for A.G.K. (the child).  We affirm.

## I.    Background

¶ 2    The Summit County Department of Human Services filed a petition in dependency and neglect alleging concerns about mother's mental health and the child's emotional well-being.  At that time, mother and the child's father shared equal parenting time.  But mother's time was supervised by maternal grandfather pursuant to orders entered in a domestic relations case.  Approximately three months later, the parties agreed to remove the supervision requirement.

¶ 3    Shortly thereafter, the juvenile court adjudicated the child dependent or neglected and adopted a treatment plan for mother.  Among other things, mother's treatment plan required that she support the child's mental health, well-being, and relationships with family members and professionals.

¶ 4    Later on, due to concerns that mother was intentionally trying to disrupt the child's relationship with father, the juvenile court transferred the child's primary residence to father and ordered

1

mother's family time to be therapeutically supervised. Mother's family time remained supervised for the remainder of the case.

¶ 5    Nineteen months after filing the petition, the Department moved for an allocation of parental responsibilities (APR) to father. Following a three-day contested hearing, the juvenile court awarded mother four overnights of unsupervised parenting time every two weeks and ordered that extraordinary expenses be divided equally between the parties. Mother appeals.

## II.    Applicable Law and Standard of Review

¶ 6    The Colorado Children's Code authorizes a juvenile court to enter an APR and address child support when it maintains jurisdiction in a case involving a dependent or neglected child. § 19-1-104(5)-(6), C.R.S. 2024; *People in Interest of E.Q.*, 2020 COA 118, ¶ 10. When allocating parental responsibilities in a dependency and neglect proceeding, the juvenile court must consider the purposes of the Children's Code articulated in section 19-1-102, C.R.S. 2024. *People in Interest of C.M.*, 116 P.3d 1278, 1281 (Colo. App. 2005). The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures through which the child's best interests can be served.

*L.G. v. People*, 890 P.2d 647, 654 (Colo. 1995). As a result, the court must allocate parental responsibilities in accordance with the child's best interests. *L.A.G. v. People in Interest of A.A.G.*, 912 P.2d 1385, 1391 (Colo. 1996).

¶ 7    An APR is within the juvenile court's discretion. *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15. A juvenile court abuses its discretion "when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies or misconstrues the law." *People in Interest of E.B.*, 2022 CO 55, ¶ 14. It's for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). And when the juvenile court's findings have record support, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15. But whether the court applied the correct legal standard in making its findings is a question of law that we review de novo. *People in Interest of N.G.G.*, 2020 COA 6, ¶ 10.

## III. Parenting Time

¶ 8     Mother contends that the juvenile court abused its discretion by failing to provide her with a path to equal parenting time. We disagree.

¶ 9     The juvenile court specifically considered mother's request for a plan, or step-up schedule, to get her to equal parenting time. But given mother's historical lack of progress with her treatment plan, her "continuing cycle of . . . conflict or dysregulation" with the child's providers and schools, and the uncertainty regarding mother's future progress, the court declined to order such a plan. In so doing, the court conveyed that expanding mother's parenting time from supervised was "a bit of a risk." But the court ultimately concluded that the schedule was in the child's best interests because it promoted her safety while also allowing the parents to develop their own routines. The record supports the court's findings.

4

¶ 10     The caseworker noted several concerns, including mother's ongoing (1) "future talk"[1]; (2) inability to follow guidelines and expectations; (3) insinuations that father wasn't properly caring for the child; (4) conflict with the child's schools; and (5) lack of appropriate support of the child's therapy. The caseworker reported that mother "continue[d] to struggle to communicate openly and respectfully with professionals regarding [the child's] education, development, and behavior," describing mother's contact with the child's principal, school counselor, and family therapist as "combative." Ultimately, the caseworker opined that until mother could understand the impact of her behavior on the child's emotional well-being and the importance of supporting the child's positive therapeutic relationships, future improvement was unlikely.

¶ 11     The court also received testimony from many professionals involved with mother during the case. The most recent family

---

[1] During the APR hearing, a family time supervisor described "future talk" as making future promises to or discussing future plans with the child when the future is unknown. For example, "future talk" included talking to the child about when she would return home to mother. The child's former play therapist explained that type of discussion could cause stress for the child.

therapist testified that mother had told her that she believed family therapy was "pointless." And the therapist was unable to continue working with mother and the child due to mother's failure to sign her treatment plan. While both family time supervisors — therapeutic and nontherapeutic — in place at the time of the hearing provided positive reports regarding mother's visits with the child, they indicated that further evaluation was needed before they could recommend a reduction in the level of supervision. Similarly, mother's therapist discussed mother's therapeutic progress but also acknowledged that mother had more work to do, such as eliminating her negative reactions to situations in the community.

¶ 12 Mother asserts that, because she made significant strides toward addressing the issues raised in her treatment plan and had a strong bond with the child, the APR wasn't in the child's best interests. But this argument effectively requires us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we can't do. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29 (recognizing that we may not reweigh the court's resolution of conflicting evidence). Mother also argues that the APR limited her "exposure" to the child. But in allocating parental responsibilities

the court's primary focus must be on the protection and safety of the child, and not the "custodial interest" of the parent. *People in Interest of M.D.*, 2014 COA 121, ¶ 12.

¶ 13 Because the juvenile court's findings are supported by the record, we discern no error.

## IV. Extraordinary Expenses

¶ 14 Mother next contends that the juvenile court erred by ordering extraordinary expenses to be divided equally between the parents. We aren't persuaded.

¶ 15 Regarding extraordinary expenses, the court ordered:

> Extraordinary expenses including summer day camps or after school programs should be split 50/50. Father to provide a request for reimbursement within 30 days [of] receipt, and [m]other shall provide payment within 30 days thereafter. If [m]other objects to a particular extraordinary expense, she may file a motion with the [c]ourt within the 30-day response period. Failure to timely object will preclude future disputes.

¶ 16 Mother asserts that this order wasn't in the child's best interests. Specifically, mother argues that, because father had sole decision-making responsibility, the division of expenses gave father financial control and could cause her to become financially

overextended.  Following the juvenile court's oral ruling, mother's counsel raised these same concerns.

¶ 17    While the court acknowledged mother's concerns, it ultimately found that the order was in the child's best interests.  In so finding, the court considered that (1) joint payment by agreement would give mother veto power by default; and (2) historically, father had enrolled the child in activities consistent with a typical child in the community.

¶ 18    The court's findings are supported by the record.  The caseworker reported that father demonstrated an ability to encourage the child's involvement in activities.  She also noted that, although father made efforts to involve mother in the child's daily activities, mother simply responded that she wasn't in agreement without providing further explanation.

¶ 19    Mother doesn't point us to any evidence, other than findings of mutual domestic violence made by the district court over two years prior, in support of her assertion that the juvenile court's order wasn't in the child's best interests.  In this case, after hearing the evidence, the juvenile court concluded that the history of domestic violence wasn't the problem.  And, as noted before, we can't reweigh

the evidence. *See S.Z.S.,* ¶ 29. Furthermore, in consideration of mother's concerns, the juvenile court added a provision allowing mother to request court intervention for any disputed expense, thereby alleviating any potential financial control the order would have given father.

¶ 20 Thus, we discern no basis for disturbing the court's division of extraordinary expenses.

## V. Disposition

¶ 21 The judgment is affirmed.

JUDGE GROVE and JUDGE JOHNSON concur.