24CA1097 Peo in Interest of ZDW 04-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1097
Rio Grande County District Court No. 21JV2
Honorable Amanda C. Hopkins, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.D.W., a Child,

and Concerning T.L. and J.D.W.,

Appellants.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHOCK
Freyre and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

---

W. Ryan Dunn, County Attorney, Del Norte, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant T.L.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant J.D.W.

¶ 1     T.L. (mother) and J.D.W. (father) appeal the judgment terminating their parent-child legal relationships with Z.D.W. (the child).  We affirm the judgment.

## I.     Background

¶ 2     In January 2021, the Rio Grande County Department of Social Services (Department) filed a petition in dependency or neglect, alleging, among other things, that mother was using illegal substances while caring for the child and had physically and verbally abused him.  The Department also cited concerns about mother's lack of supervision and inability to provide proper care for the child.  It alleged that father did not have any relationship with the child.  The parents admitted to the allegations in the petition, and the juvenile court adjudicated the child dependent or neglected.

¶ 3     The juvenile court adopted treatment plans for the parents. Mother's treatment plan required her to (1) address her substance abuse issues; (2) participate in family time; (3) complete a mental health evaluation and treatment; (4) attend parenting classes; (5) maintain stable housing and employment; and (6) sign releases for the Department.  Father's treatment plan was similar, with the exception of the substance abuse and mental health components.

1

¶ 4    In September 2022, the guardian ad litem (GAL) moved to terminate the parents' parental rights under section 19-3-604(1)(c), C.R.S. 2024.  The juvenile court held a three-day evidentiary hearing on the motion in January 2023.  It then reopened the evidence to hear additional testimony regarding the Department's efforts to rehabilitate the parents and evaluate kinship placements.

¶ 5    The juvenile court held another evidentiary hearing in September 2023, after which it concluded that the GAL had not established that mother was unfit because the Department had not made reasonable efforts to reunify her with the child.  The court found that the GAL had established the termination criteria with respect to father, but it declined to terminate his parental rights because an allocation of parental responsibilities to mother or a maternal relative could still have been a less drastic alternative to termination.  The court held its final judgment in abeyance to allow the GAL another opportunity to present additional evidence.

¶ 6    The juvenile court held a final evidentiary hearing in April 2024.  After that hearing, the court entered a written order terminating the parent-child legal relationships between the parents and the child.  The court found the Department had made

reasonable efforts to rehabilitate mother, but she remained unfit. It also found there were no less drastic alternatives to termination.

## II. Reasonable Efforts

¶ 7 Both parents assert that the juvenile court erred by concluding that the Department made reasonable efforts to rehabilitate them and reunify them with the child. We disagree.

### A. Applicable Law and Standard of Review

¶ 8 Before a juvenile court may find a parent unfit under section 19-3-604(1)(c), the county department of human services must make reasonable efforts to rehabilitate the parent and reunite the family. §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024.

¶ 9 Reasonable efforts means the "exercise of diligence and care." § 19-1-103(114). This standard is satisfied by the provision of services in accordance with section 19-3-208. § 19-1-103(114). Such services may include, as necessary and appropriate, screening, assessments, and individual case plans; home-based family and crisis counseling; information and referral services; family time; and placement services. § 19-3-208(2)(b).

¶ 10 The services must be "appropriate to support the parent's treatment plan." *People in Interest of S.N-V.*, 300 P.3d 911, 915

(Colo. App. 2011). But the parent is responsible for using those services to obtain the assistance needed to comply with the plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

¶ 11 When determining whether family time services are necessary and appropriate under section 19-3-208(2)(b)(IV), the child's health and safety are the paramount concerns. *People in Interest of B.C.*, 122 P.3d 1067, 1070 (Colo. App. 2005). Questions about family time are entrusted to the juvenile court's sound discretion, and the court may not delegate those decisions to someone else. *People in Interest of D.G.*, 140 P.3d 299, 302-05 (Colo. App. 2006).

¶ 12 When a parent has a qualifying disability under the Americans with Disabilities Act (ADA), the Department must "account for and, if possible, make reasonable accommodations for the parent's disability when devising a treatment plan and providing rehabilitative services." *People in Interest of S.K.*, 2019 COA 36, ¶ 34; *see also* § 19-3-208(2)(g) (requiring services to comply with the ADA). And in assessing the reasonableness of the Department's efforts, the juvenile court must consider whether reasonable accommodations were made. *S.K.*, ¶ 34. A parent is responsible for disclosing to the department and the court information regarding a

4

disability and any necessary accommodations.  *Id.* at ¶ 21.  If the parent's disability status is in dispute, the court must then make a factual finding as to whether the parent has a qualifying disability. *See id.* at ¶ 21 n.2; *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 21.

¶ 13     Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law.  *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.  We review the juvenile court's factual findings for clear error and review de novo its legal determination, based on those findings, as to whether the department satisfied its reasonable efforts obligation.  *Id.*

### B.    Father

¶ 14     Father first contends that the Department failed to make reasonable efforts because it did not provide him with reasonable accommodations for his intellectual disability.  He also argues that the Department did not make reasonable efforts with respect to family time and housing resources.  We discern no error.

¶ 15     Initially, the juvenile court found, with record support, that father failed to establish that he was a qualified individual with a disability under the ADA.  Although the record indicates that one of father's providers believed that father might have an intellectual or

learning disability, father did not disclose any such disability or request any accommodations before the court adopted his treatment plan. After the GAL moved to terminate father's parental rights, father filed an ADA notice, and the court ordered the Department to provide father with a psychological evaluation.

¶ 16   A psychological evaluator submitted a report in December 2022. As pertinent to this appeal, the evaluator believed that father might have "a significant cognitive deficit consistent with an intellectual disability," but he could not confirm that father had an intellectual disability until he completed an adaptive assessment. The adaptive assessment never occurred. In finding that it was "not evident" that father was a qualified individual with a disability, the court relied on the psychological evaluator's testimony. Because the record supports the juvenile court's finding, the Department did not have any ADA-based obligation to make reasonable accommodations for father. *See S.Z.S.,* ¶ 21; *S.K.,* ¶ 21.

¶ 17   In any event, the juvenile court directed the Department to address any requests for accommodation by father as if he did have a qualified disability. With respect to this direction, the court found that the Department made inquiries but that father never requested

6

any additional services or accommodations beyond those the Department was already providing. In other words, the court found, with record support, that even if father had an ADA-cognizable disability, the Department provided reasonable accommodations for him and father did not request any additional accommodations. *See S.K.*, ¶ 21. We thus reject father's argument that the Department did not make reasonable accommodations.

¶ 18     Father next asserts that the Department failed to provide him with adequate family time because the juvenile court allowed the child to decide whether he would attend visits. As explained in more detail below, the court recognized its error in allowing the child to dictate whether a visit would occur, and it rescinded that order. *See D.G.*, 140 P.3d at 302. We recognize that the court's improper order may have caused father to miss some visits with the child. But the record otherwise shows that the Department made reasonable efforts to provide father with family time during the rest of the case, except when the court suspended father's visits, which father does not challenge. Under these circumstances, we cannot conclude that the Department failed to make reasonable efforts.

¶ 19    Father also argues that the Department failed to provide him with housing resources.  But the record is to the contrary.  Father's life skills worker testified that he worked with father to obtain housing by helping him fill out housing applications.  And the caseworker testified that the Department offered housing financial assistance, but father declined.  We therefore discern no error.

## C.    Mother

¶ 20    Mother's challenges to the juvenile court's reasonable efforts determination center primarily on her family time.  She asserts that the Department failed to make reasonable efforts by suspending her family time with the child and failing to provide her with necessary services for her family time to resume.  We are not persuaded.

¶ 21    The juvenile court determined that the Department did not make reasonable efforts to provide mother with family time services before September 2023.  It found that the Department did not provide mother with any family time while she was in inpatient treatment during the fall of 2021.  Although the Department did offer visits to mother in the summer of 2022, the court granted the Department's request to suspend family time after the first visit "due to the child's regression in behavior."  Then, at the termination

8

hearing in January 2023, the court realized it had never restarted mother's family time and ordered visits to begin as soon as possible. But the court again suspended family time after only one visit.

¶ 22 In the spring of 2023, the child "began showing a disinterest in attending visits," and the GAL requested that the child be allowed to cancel visits if he did not want to attend. The court granted this request. But it later reversed that decision. In September 2023, the court ordered the Department and the child's treatment providers to develop a plan to "reintroduce" the child to mother.

¶ 23 The child's family time supervisor testified at the termination hearing that she had developed a reintegration plan, which began with mother recording videos for the child, then moving to virtual visits, and finally to in-person visits. Consistent with this plan, mother recorded a message for the child, but he refused to watch it, and when the child's therapist attempted to play the message for the child, the child threw a chair at her. As a result, the team decided to "skip steps" and just start in-person therapeutic visits.

¶ 24 After that, mother's first visit with the child in January 2024 "went fairly smoothly." But soon after the visit, the child again became dysregulated, and mother opted to delay her February visit.

The family time supervisor offered mother another visit at the end of February or the beginning of March, which mother declined.

¶ 25    In March 2024, the GAL again requested that the juvenile court suspend mother's family time based upon concerns about the child's emotional health.  After considering the reports from the child's therapists, the court found that it was in the best interests of the child to temporarily suspend mother's visits with the child. The court did not reinstate them before the termination hearing.

¶ 26    In its order terminating the parent-child relationship, the juvenile court acknowledged its previous finding that the Department did not make reasonable efforts *before* September 2023.  But based upon the additional testimony, it determined that the Department had made reasonable efforts to provide mother with family time *after* September 2023.  The record supports the court's finding.  As noted above, after September 2023, the Department worked with its treatment providers to restart family time between mother and the child.  The Department eventually provided a visit, but mother declined additional visits after the first one.  The court then suspended further face-to-face family time, at the request of the GAL.  *See People in Interest of E.D.*, 2025 COA 11, ¶ 40 (noting

that "when a juvenile court appropriately restricts parenting time," a department can satisfy its reasonable efforts obligation by "making available" therapeutic family time services, "even if those services don't successfully result in face-to-face contact because of continuing risks to the child's or youth's health and safety").

¶ 27　　On appeal, mother largely recounts the Department's lack of efforts *before* September 2023 in support of her contention that the Department failed to make reasonable efforts to provide her with family time.　But mother does not develop any argument as to why the Department's attempts to reestablish family time *after* September 2023 were lacking.　Nor does she contend that the juvenile court improperly suspended her visits in March 2024.

¶ 28　　We therefore conclude that the juvenile court did not err by determining that the Department made reasonable efforts.

### III.　Fitness

¶ 29　　Mother asserts that the juvenile court erred by finding that she was unfit and unlikely to become fit in a reasonable time.　She maintains that, in so finding, the court erroneously applied an "improperly stringent standard of parental fitness."　We disagree.

### A. Applicable Law and Standard of Review

¶ 30    To terminate a parent-child legal relationship under section 19-3-604(1)(c), the juvenile court must find that the parent is unfit and that the parent's conduct or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c)(II), (III).

¶ 31    A parent is unfit if their conduct or condition renders them unable or unwilling to give their child reasonable parental care. *People in Interest of D.P.*, 160 P.3d 351, 353 (Colo. App. 2007). Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006).  In making this determination, the juvenile court must consider the specific physical, emotional, and mental needs of the child.  *See People in Interest of K.T.*, 129 P.3d 1080, 1081 (Colo. App. 2005).

¶ 32    A parent's noncompliance with a treatment plan generally "demonstrates a lack of commitment to meeting the child's needs" and can therefore be considered in determining parental fitness. *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).  But even if the parent substantially complies with a treatment plan, the

12

parent may still be unfit if the plan did not successfully rehabilitate the parent. *See People in Interest of K.B.*, 2016 COA 21, ¶ 26; *see also D.P.*, 160 P.3d at 354 (affirming finding of unfitness despite the father's "maximum effort" and completion of his treatment plan where he still could not consistently meet the child's needs).

¶ 33     When deciding whether a parent's conduct or condition is likely to change within a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). What constitutes a reasonable time is fact-specific and varies from case to case. *People in Interest of D.Y.*, 176 P.3d 874, 876 (Colo. App. 2007). But a reasonable time is not an indefinite time, and it must take into account the child's physical, mental, and emotional conditions and needs. *S.Z.S.*, ¶ 24.

¶ 34     Whether the juvenile court properly terminated parental rights is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10.

## B. Analysis

¶ 35 The juvenile court determined that mother was unfit to parent the child and unlikely to become fit in a reasonable time. The court based that finding on several factors, including evidence that mother (1) did not have a relationship with the child; (2) did not take accountability for her part in causing the child's trauma; and (3) had failed to properly address her own mental health issues. The court also found that mother could not adequately provide for the child because she lacked insight into the child's condition and special needs. The record supports the court's findings.

¶ 36 The family time supervisor opined that mother did not "fully understand the depth of what [the child's] needs [were] and what he require[d]." She also testified that mother could not care for the child's mental and emotional needs, nor would she likely be able to do so at any point in the future. The supervisor explained that mother had not learned any techniques to cope with the child's dysregulation and that her only response was to avoid spending time with him. She testified that the child needed a stable home more than anything and that she had no confidence that mother would be able to provide such stability within a reasonable time.

14

¶ 37    The child's therapist agreed that mother did not fully understand the child's condition and needs.  She also said that mother never asked her about the child's dysregulation to better understand his needs and that if the child were returned to mother, he would "continue to have significant behavioral and emotional" issues and be "in [a] constant [state of] dysregulation."  She opined that no amount of additional time would alleviate these issues because the child did not "have any more time to give."

¶ 38    Another of the child's therapists testified that returning the child to mother would not be in his best interests because he had "pretty high needs" that mother could not address.  She also noted that, because mother caused the child's initial trauma, he would continue to have "red flags" around her.  This therapist agreed with the other therapist's opinion that no additional time would resolve the issues in this case.  In reaching this opinion, she pointed to the length of time the child had been out of the home, his young age, the history of abuse and neglect, and his continued dysregulation.

¶ 39    Mother asserts that the juvenile court erred because the record established that she had addressed all the issues that precipitated the filing of the case by completing substance abuse

15

treatment and maintaining sobriety, as well as having housing and employment. She contends that the court applied an "unrealistic standard of parental fitness" by considering information beyond the original reasons for the Department's involvement. We disagree.

¶ 40 The Department's initial report filed at the outset of the case did cite concerns about mother's substance abuse and impending eviction. But it also alleged other concerns regarding mother's inability to provide proper care for the child, including physical abuse, verbal abuse, and lack of supervision. Consistent with the breadth of these concerns, mother's treatment plan required not only that she refrain from drugs and alcohol and maintain stable housing and employment, but also that she actively engage in family time and mental health counseling. And although the juvenile court recognized that mother had made significant progress with respect to sobriety, housing, and employment, it determined, with record support, that she had not successfully addressed the family time and mental health components of her treatment plan.

¶ 41 In particular, the court found that mother (1) did not adequately engage in family time; (2) had not developed any relationship with the child; (3) had not taken responsibility for

16

causing the child's trauma; and (4) was not capable of properly caring for her own mental health needs. *See D.P.*, 160 P.3d at 353-54 (affirming finding that parents were unfit where there had been "'just minimal' improvement in their parenting skills" and they had a limited ability to recognize and meet the child's needs). In other words, although mother may have addressed some of the concerns underlying the case, she had been unsuccessful in addressing others, and she remained unable to properly care for the child.

¶ 42 We are not convinced otherwise by mother's assertion that the evidence established that she was "willing" to provide reasonable parental care by "engaging in therapeutic work" with the child. The juvenile court explicitly (and correctly) recognized that the matter at issue was not whether mother was *willing* to provide the child with reasonable parental care, but whether she was *able* to do so. *See* § 19-3-604(2) (defining an unfit parent as one who is "unable *or* unwilling" to provide reasonable parental care) (emphasis added). In doing so, the juvenile court applied the correct legal standard.

¶ 43 Finally, mother's reliance on *S.R.N.J-S.* is misplaced. In that case, a division of this court concluded that the record did not support the juvenile court's finding that the parents were unfit.

*S.R.N.J-S.,* ¶¶ 30, 57. But in that case, the caseworker testified that the parents *had* successfully complied with their treatment plans, *could* provide reasonable parental care, and *were* fit parents. *Id.* at ¶¶ 19, 31. The division determined that, because the evidence did not support a finding that the parents were unfit, "the need for permanency alone" could not justify termination. *Id.* at ¶ 60.

¶ 44 In contrast, as described above, the expert witnesses in this case opined that mother was *un*fit and could *not* become fit in a reasonable time because she could not provide for the child's special needs. The evidence also establishes that, even though mother had complied with parts of her treatment plan, her partial compliance did not render her a fit parent. Thus, unlike in *S.R.N.J-S.,* the record supports the juvenile court's findings that mother was unfit and unlikely to become fit in a reasonable time. And because the court properly found that mother was unfit and unlikely to become fit in a reasonable time, it could consider the child's need for stability and permanency in determining whether termination was in the child's best interests. We discern no error.

## IV. Disposition

¶ 45 The judgment is affirmed.

JUDGE FREYRE and JUDGE SULLIVAN concur.