24CA1067 Peo in Interest of NC 02-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1067
El Paso County District Court No. 21JV415
Honorable Diana K. May, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of N.C., a Child,

and Concerning B.R-V.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Brown and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

---

Kenneth Hodges, County Attorney, Shannon Boydstun, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

B. Kate Harvey, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1    In this dependency and neglect action, B.R-V. (mother) appeals the judgment terminating her parent-child legal relationship with N.C. (the child).  We affirm.

## I.    Background

¶ 2    In 2019, the El Paso County Department of Human Services (the Department) filed a petition in dependency and neglect, alleging concerns about mother's substance use.  Mother successfully completed a treatment plan, and the juvenile court dismissed the dependency and neglect action in 2020.

¶ 3    A little more than a year later, the Department received a series of referrals with concerns about physical and sexual abuse of the then-three-year-old child.  The Department filed another petition in dependency and neglect.  The juvenile court granted temporary custody of the child to the Department and issued a protective order requiring supervised family time between mother and the child.

¶ 4    The juvenile court adjudicated the child dependent and neglected.  The court adopted a treatment plan for mother which required that she provide a safe and stable home environment for the child, improve her protective parenting skills, participate in

family time, and address her mental health and substance abuse concerns. Mother was being held at the county jail on a short sentence when the treatment plan was adopted, and the court acknowledged that mother's participation in some elements may be limited to times she was out of custody.

¶ 5 Mother was released from custody shortly after the treatment plan was adopted and participated in life skills and individual therapy. Mother's life skills and mental health providers later testified that she engaged only sporadically and that they had concerns about her ability to be a safe and protective parent. Nonetheless, ten months after the petition was filed, the Department returned the child to her care and custody when she obtained stable housing. That return home, however, was short lived.

¶ 6 After the child had been home with mother for about four months, the Department received a new referral with concerns about mother's substance use. The juvenile court removed the child from mother's home for the second time and issued a new order for supervised family time. Initially, the child was placed with maternal family members and the Department moved for an

allocation of parental responsibilities.  However, the Department

withdrew the motion when the maternal family members decided

not to be placement providers for the child.

¶ 7     About two months later, mother was arrested.  Mother was

held at the county jail for three months and then transferred to the

Department of Corrections (DOC), where she remained at the time

of the termination hearing.  After her sentencing, the Department

moved to terminate mother's parental rights.

¶ 8     Three years after the filing of the petition and almost two years

after the child's second removal, the juvenile court terminated

mother's parental rights following a contested hearing.

## II.     Reasonable Efforts

¶ 9     Mother contends that the juvenile court erred by finding that

the Department provided reasonable efforts to reunify her after her

incarceration.  Although we agree, we conclude that the error was

harmless.

### A.     Standard of Review

¶ 10    Whether a department satisfied its obligation to make

reasonable efforts to reunify the family is a mixed question of fact

and law.  We review the juvenile court's factual findings related to

3

reasonable efforts for clear error but review de novo the court's legal determination, based on those findings, as to whether a department satisfied its reasonable efforts obligation. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.

### B. Applicable Law

¶ 11 Before a court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2024, a county department of human services must make reasonable efforts to rehabilitate parents and reunite families. §§ 19-3-100.5(1), 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. "Reasonable efforts" means "the exercise of diligence and care" for children in out of home placement. § 19-1-103(114).

¶ 12 To that end, services that are provided in accordance with section 19-3-208 are consistent with reasonable efforts. § 19-1-103(114). The services that "must be available and provided," as relevant here, include family time. § 19-3-208(2)(b). A child is entitled to in-person family time unless a court finds that the child's health and safety is endangered by face-to-face contact. *People in Interest of D.G.*, 140 P.3d 299, 305 (Colo. App. 2006). Any ongoing restriction of family time must be supported by a court order

4

finding that the restriction "is necessary to protect the child's or youth's safety or mental, emotional, or physical health." § 19-3-217(1.5)(d), C.R.S. 2024.  A parent's incarceration, in and of itself, doesn't excuse a department from making reasonable efforts, including providing family time services.  *See* §§ 19-3-507(1)(f)(I), 19-3-508(1)(e), C.R.S. 2024.

¶ 13     To evaluate whether a department made reasonable efforts, the court should consider whether the services provided were appropriate to support the parent's treatment plan.  *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011).  Whether a department made reasonable efforts "must be measured holistically rather than in isolation with respect to specific treatment plan objectives."  *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 35.  The parent is ultimately responsible for using the services provided to obtain the assistance needed to comply with the treatment plan.  *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).  The court may therefore consider a parent's unwillingness to participate in treatment when determining whether a department made reasonable efforts.  *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

C.    Analysis

¶ 14    Here, the juvenile court made a perfunctory finding that the Department made reasonable efforts.  The court determined that mother failed to comply with services offered under the treatment plan before her incarceration.  The court acknowledged mother's contention that the Department failed to exert efforts after her incarceration but "disagree[d]," noting that the caseworker "communicated with mother through letters and requested releases."

¶ 15    But requesting releases and responding to three of mother's letters during the ten months of mother's incarceration doesn't amount to providing screenings, assessments, referral services, or family time that "must be available and provided" to all families when a child is in out of home placement.  § 19-1-208(2)(b).  These minimal efforts didn't meet the reasonable efforts standard.

¶ 16    Once mother was incarcerated at the DOC, the caseworker's reports filed with the court regarding mother's services were identical and limited to a single sentence: "all services have been closed due to [mother's] incarceration."  At the termination hearing, the caseworker testified that she never went to the DOC facility

where mother was housed, although she knew the facility and it was less than fifty miles away.

¶ 17 In its answer brief, the Department doesn't deny that it failed to provide mother with family time services. Instead, it claims, without citing to the record, that family time wasn't going well before mother's incarceration. Even if this assertion was true, family time may not be suspended because of failure to comply with the treatment plan, and it is the juvenile court — not a department — who must determine whether a child's health or safety is endangered by family time and issue orders restricting that family time if appropriate. *See People in Interest of B.C.*, 122 P.3d 1067, 1070-71 (Colo. App. 2005); *see also* § 19-3-217(1.5)(f) ("The court or the county department shall not limit family time as a sanction for a parent's failure to comply with court orders or services if the child's or youth's safety or mental, emotional, or physical health is not at risk as a result of the family time."). Regardless, in this case the Department didn't seek to amend the level of family time and didn't provide services. Moreover, there is no indication in the record that the Department provided any support to the child's

placement providers to set up family time at the DOC between the child and mother.

¶ 18 However, we "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." C.R.C.P. 61. "An error affects a substantial right only if it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *People in Interest of C.C.*, 2022 COA 81, ¶ 20 (internal quotations omitted). And, in the end, we aren't persuaded that the Department's failure to provide reasonable efforts after mother's incarceration in the DOC impacted the outcome of the dependency and neglect action.

¶ 19 The juvenile court found that mother didn't regularly engage in the case or services prior to her incarceration. True, the record suggests that mother must have made some progress in the first year of the action because the court briefly returned custody of the child to her. There was, however, no evidence at all presented during the termination hearing about the first eight months after the child's second removal. Nonetheless, the scant evidence that was presented suggested that mother failed to consistently engage

in services even before the child was returned to her care.  And a family time supervisor testified that mother attended only half of the family time available to her in the month before her arrest and incarceration.

¶ 20    Most importantly, the juvenile court found that mother was unfit because she continued to demonstrate "the same non-protective behavior" that was alleged when the petition was filed.  The court found that mother was "making excuses and minimizing or just outright not believing allegations" made by the child.

¶ 21    The record supports these findings.  Mother testified that she was engaged in services at the DOC, including mental health and substance abuse treatment.  But despite this recent engagement and nearly a year of services focused on protective parenting at the beginning of the case, mother's testimony reflected a lack of insight into the safety risks that men in her life posed to the child.  Mother testified that the dependency and neglect action opened because her "problem was just having a heart or passion for — for certain things, certain people."  Mother testified that she "lik[ed] a male presence," and people she considered family "did sometimes, time to time, see [the child]."  Mother named three individuals she

considered family, including several men that the Department specifically requested not be in contact with the child because of existing protective orders, criminal child abuse charges, and reports from the child that they weren't safe, put cigarettes out on her body, and sexually abused her. Despite these concerns, mother insisted that "none of [these individuals] hurt" the child and minimized the multiple cigarette burns reported to the Department by explaining the child was burned once while climbing over one of the men on a couch. Mother testified that she didn't believe the child's reports of sexual abuse, although the caseworker testified that the sexual abuse was "very prevalent" in the child's processing. At the beginning of the termination hearing, mother asked the court to recognize an individual as the child's psychological father; the caseworker later testified that the child was listed as a victim in this individual's domestic violence and child abuse cases.

¶ 22    Given this evidence and the court's findings, the Department's failure to provide services to mother in the DOC was harmless.

### III.    Fitness in a Reasonable Period of Time

¶ 23    Mother next contends that the juvenile court erred by finding that she wouldn't become fit within a reasonable period of time.

Specifically, mother contends that she made "significant progress before her incarceration," was engaged in services while serving her DOC sentence, and maintained a relationship with her child that should have been preserved. We aren't persuaded.

¶ 24 When determining if a parent is likely to change within a reasonable time, "the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24. The court need not give a parent additional time, even when there has been recent progress on the treatment plan. *Id.* at ¶¶ 24, 28-29. An unfit parent is one whose conduct or condition renders them "unable or unwilling to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions." § 19-3-604(2).

¶ 25 What constitutes a reasonable time is fact specific and must be determined by considering the physical, mental, and emotional conditions and needs of each particular child. *Id.* at ¶ 25. When, as here, a child is under six years old at the time of the filing of the

petition, the action is subject to the expedited permanency planning provisions and the court must consider the child's need to be placed in a permanent home as expeditiously as possible. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2024.

¶ 26     As discussed in detail above, the juvenile court determined, with record support, that mother was unfit based on her lack of engagement and inability to act as a protective parent.  Although the juvenile court briefly returned the child to mother's custody ten months after the petition was filed, the evidence presented at the termination hearing suggested that mother's progress on her treatment plan was minimal at the time the child was returned.

¶ 27     The court considered mother's recent engagement with services at the DOC but determined "those do not negate the almost three years of . . . consistent behaviors and lack of appreciation [of] the needs, the best interests of her child."  The court's determination that mother's behaviors continued to endanger the child are supported by the record.

¶ 28     The juvenile court found that the child didn't have a significant bond with mother.  At the time of the termination hearing, the child was almost seven years old and the dependency

12

and neglect action had been open for almost three years.  The court noted that the child was in mother's care less than two years in her lifetime over the course of two dependency and neglect cases.  Only one visitation supervisor testified concerning just a month-long period, but the evidence before the court was that mother didn't regularly attend family time during that period.

¶ 29     Most importantly, the juvenile court considered this child's need for permanence.  The court determined that the child needed a stable home in part because of her young age.  The juvenile court determined that termination was in this child's best interests.  The caseworker testified that the child struggled with attachment and appropriate boundaries and needed stability and predictability.  The caseworker, an expert in child protection, opined that the child needed to "not be in this state of flux and unknown and apprehension."  The caseworker further opined that the child needed permanency quickly so that she could know a "forever" home and that termination of mother's parental rights was in the child's best interests.

¶ 30     Given the record support for the juvenile court's findings regarding mother's lack of progress over the long course of the

dependency and neglect action and the child's immediate need for permanency, we discern no error in the court's conclusion that mother couldn't become fit in a period of time that would be reasonable for the child.

## IV. Disposition

¶ 31 The judgment is affirmed.

JUDGE BROWN and JUDGE MOULTRIE concur.