25CA0206 Peo in Interest of SKF 03-05-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0206
El Paso County District Court No. 22JV30179
Honorable Robin Chittum, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of S.K.F., Y.Y.F., and A.N.F., Children,

and Concerning R.F.,

Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE SCHUTZ
Freyre and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

---

Kenneth Hodges, County Attorney, Melanie E. Gavisk, Senior County Attorney, Melanie Douglas, Contract Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem for S.K.F.

Josi McCauley, Counsel for Youth, Superior, Colorado, for Y.Y.F. and A.N.F.

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, R.F. (father) appeals the judgment terminating his parent-child legal relationships with A.N.F., Y.Y.F., and S.K.F. (the children).  We reverse the judgment and remand the case for further proceedings.

## I.    Background

¶ 2    In July 2022, the El Paso County Department of Human Services filed a petition in dependency and neglect regarding the children, who were eight, ten, and fourteen years old at the time.  Prior to the filing, father had been arrested based on allegations of sexual abuse made by the children's older sister, who was originally named in the petition, but who has since turned eighteen and is therefore no longer a party.  The Department also alleged that father had physically and verbally abused the children and that their mother, who did not live in father's home, failed to protect them from the alleged abuse.

¶ 3    The juvenile court initially granted temporary custody of the children to mother under the Department's supervision.  The court ordered that father's contact with the children be supervised.  Approximately two weeks later, father's criminal case was

1

dismissed, and he was released from custody. However, the children remained with mother.

¶ 4    About a month later, the Department filed an amended petition alleging that mother's boyfriend had physically abused the youngest child. Consequently, the juvenile court removed the children from mother's custody and granted temporary custody of the children to the Department. They were later placed in foster care.

¶ 5    On multiple occasions father requested family time with his children. Before any supervised family time occurred, the two younger children's guardian ad litem (GAL), who also served as the older child's counsel for youth (CFY), moved the court to require that all family time be therapeutic instead of supervised.[1] Although the court did not take any evidence on the issue, it ordered therapeutic family time over father's objection.

---

[1] When the case first opened, the juvenile court appointed the same attorney to serve as the younger two children's GAL and the older child's CFY. Fifteen months into the case, the middle child turned twelve, and the GAL transitioned to serving as her CFY. For the remainder of the case, the same attorney served as the youngest child's GAL and the older two children's CFY.

¶ 6      Around the same time, mother admitted the allegations in the petition, and the juvenile court adopted a treatment plan for her. Three months later, father's counsel appeared in court and, on father's behalf, entered a no-fault admission to the allegations in the petition. Although father was not present in court and did not sign a written document stating that he had been advised of his rights and the consequences of stipulating to the entry of an adjudication, the court accepted the admission and adjudicated the children dependent or neglected. Father agreed to the Department's proposed treatment plan except for its objectives requiring him to complete a psychosexual evaluation and a mental health evaluation. After the parties agreed to remove the requirement for a psychosexual evaluation but keep the requirement for a mental health evaluation, the court adopted the treatment plan.

¶ 7      In the following months, father participated in life skills training and individual therapy. He also continued to request family time or at least some contact with the children. However, by July 2023, no family time had occurred, and father moved the juvenile court to find that the Department was not meeting its

obligation to make reasonable efforts based on its failure to provide him family time.

¶ 8 Approximately five and a half months later, after two continuances, the juvenile court held a two-day evidentiary hearing on father's reasonable efforts motion. At that hearing, the caseworker testified that the referral for therapeutic family time was open, but the children's therapists did not believe that the children were ready for family time with father. She also testified that the older two children consistently told her that they did not want to see father. At the end of the hearing, the court found that the Department had been making reasonable efforts but family time "can only be done when the children are ready." The court also found that forcing the children to participate in family time before they were ready would be emotionally detrimental to them.

¶ 9 About three months later, the Department filed a motion to terminate both parents' rights. Mother confessed the motion, but father contested it, and the juvenile court held a four-day termination hearing over the course of five months. Approximately two and a half years after the case opened, the court granted the Department's termination motion. Father had not received any

4

family time with the children between the start of the case and entry of the termination order.

## II. Therapeutic Family Time and Reasonable Efforts

¶ 10     Father argues that the Department deprived him of any opportunity to have contact with the children despite its failure to establish that such contact posed a risk to the children's health or welfare. More specifically, he argues that the court erred by increasing the level of family time supervision without first holding a hearing, as required by section 19-3-217(3), C.R.S. 2025.

¶ 11     Father also argues that the juvenile court erred by concluding that the Department made reasonable efforts to reunify him with his children.

¶ 12     After setting forth the applicable law, we address father's contentions in turn.

### A. Applicable Law and Standard of Review

¶ 13     A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct

or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 14 "One of the goals of the Children's Code is to preserve the parent-child relationship whenever possible." *People in Interest of A.A.*, 2020 COA 154, ¶ 5. Thus, before terminating a parent's rights under section 19-3-604(1)(c), the juvenile court must consider whether the department of human services made reasonable efforts to rehabilitate the parent and reunite the family. *See* §§ 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2025; *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). "Reasonable efforts" means the "exercise of diligence and care" for children who are in out-of-home placement. § 19-1-103(114), C.R.S. 2025. Appropriate services provided in accordance with section 19-3-208, C.R.S. 2025, satisfy the reasonable efforts standard. § 19-1-103(114).

¶ 15 As relevant here, a department must provide family time services for parents with children or youth in out-of-home placement if those services are determined to be necessary and appropriate by the individual case plan. § 19-3-208(1), (2)(b)(IV); *People in Interest of E.D.*, 2025 COA 11, ¶ 14. The children's health and safety are the paramount concerns in determining whether,

6

and what type of, family time services are necessary and appropriate. *See A.A.*, ¶ 17. Family time services shall be designed to promote the children's health, safety, and well-being; facilitate the speedy reunification of a parent and their children; and promote the children's best interests. *Id.*; *see* § 19-3-208(2)(a).

¶ 16     Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error but review de novo its legal determination that a department made reasonable efforts to rehabilitate the parent and reunite the family. *Id.*

## B.     Therapeutic Family Time

¶ 17     First, we agree with father that the juvenile court erred by ordering therapeutic family time, which constituted an increase in the level of family time supervision, without first holding a hearing on the issue. Section 19-3-217(3) states the following:

> Absent the issuance of an emergency order, a parent granted family time is entitled to a hearing prior to an ongoing reduction in, suspension of, or increase in the level of supervision, including a change from in-person family time to virtual family time. If the court issues an emergency order suspending,

> reducing, or restricting family time, a parent is entitled to a hearing within seventy-two hours after the order is issued, excluding Saturdays, Sundays, and court holidays.

¶ 18 Recall that at the beginning of the case, the juvenile court ordered supervised family time for father. Father did not object to that order, and in September 2022, he requested that the Department make a referral so his supervised family time could begin. The Department made the referral, and the first family time session was scheduled for December 2022.

¶ 19 However, the day before that family time session was set to occur, the GAL-CFY moved the court to order that a therapist supervise all family time. The family time session scheduled for the following day did not occur. Three weeks later, the parties appeared in court, and father expressly objected to increasing the level of family time supervision to therapeutic. Father's counsel also stated that father's life skills worker was willing and able to supervise family time.

¶ 20 Without taking any evidence, the court ordered therapeutic family time and directed the Department to make a referral so that therapeutic family time could "start right away." The court went on

8

to state that it would schedule a "contested visitation hearing" for father because he was "objecting to the therapeutic visits." However, the record does not indicate that the court held a hearing to determine if the increase in supervision was necessary and appropriate. *See A.A.*, ¶ 17 (when determining the level of family time supervision, the children's health and safety are paramount, but, if possible, the family time services should also facilitate the speedy reunification of parents and children).[2]

¶ 21     To the extent that the Department or the GAL-CFY argues that the hearing in December 2023 satisfied the requirements of section 19-3-217(3), we disagree.[3]  True, the court held a hearing on father's reasonable efforts motion and request for contact with the

---

[2] Although not in effect when the juvenile court ordered therapeutic family time, section 19-3-217(1.5)(d), C.R.S. 2025, recognizes the longstanding concept that while the children's health and safety are paramount in setting parameters around family time, courts must ensure that it occurs in the least restrictive manner possible. Specifically, subsection (1.5)(d) states that "[t]he court may only restrict or deny family time if it is necessary to protect the child's or youth's safety or mental, emotional, or physical health," and "shall order family time in the least restrictive . . . supervision . . . to satisfy the child's or youth's safety or mental, emotional, or physical health."

[3] While the briefing was not clear on this point, at oral argument counsel for the GAL-CFY conceded that the failure to hold a timely hearing under section 19-3-217(3) was error.

children in December 2023 — approximately eleven months after it ordered that supervision be increased to a therapeutic level. But absent an emergency, section 19-3-217(3) required the court to hold a hearing "*prior to* an . . . increase in the level of supervision." (Emphasis added.)

¶ 22 And even assuming that the court entered its order on an emergency basis to protect the children's health or safety, the statute required the court to hold a hearing within seventy-two hours after it issued the order. *See* § 19-3-217(3). Thus, we are not persuaded that the court complied with section 19-3-217(3) by holding a hearing eleven months after it ordered that supervision be increased to a therapeutic level.

¶ 23 Based on the foregoing, we conclude that the juvenile court erred by ordering that supervision be increased to a therapeutic level without first holding a hearing, as required under section 19-3-217(3). And that error not only violated the statute, but it also unfortunately permeated and tainted the court's subsequent reasonable efforts and termination analysis.

## C.    Reasonable Efforts

¶ 24    Although the juvenile court entered its order for therapeutic family time in violation of section 19-3-217(3), the record indicates that the parties proceeded under that order as if it were proper, thereby precipitating additional errors as discussed below.

### 1.    Confusion About the Order for Therapeutic Family Time Prior to the Reasonable Efforts Hearing

¶ 25    Throughout the juvenile court proceedings, there appears to have been some confusion about what "therapeutic family time" meant.  Initially, the GAL-CFY requested that family time take place in "the presence of a therapist."  The court granted that motion and ordered that therapeutic family time "start right away."  Thus, the court's order for therapeutic family time required the Department to arrange family time supervised by a therapist.

¶ 26    However, by the time of the reasonable efforts hearing, the Department had not scheduled any family time sessions, and father had not had any contact with the children in approximately a year and a half.  The caseworker's testimony indicates that, by that point, she appeared to think that providing therapeutic family time meant waiting until the children were "therapeutically ready" to

11

have contact with father.  Essentially, she believed that the court's order was for the Department to wait to schedule any family time until father wrote accountability letters to the children and the children and their therapists agreed that the children were ready for family time.[4]

¶ 27     Nothing in the record indicates that, prior to the reasonable efforts hearing, the juvenile court had ordered that father have no family time until the children's therapists recommended it, until the children agreed to it, or until father had written accountability letters to the children.  Nonetheless, at the end of the reasonable efforts hearing, the juvenile court found that the Department had been making reasonable efforts to provide family time services in the eleven months leading up to the hearing.  In other words, it implicitly approved of the Department's decision, made without a court order, to withhold therapeutic family time until the children said they wanted to see father, their therapists recommended that

_____

[4] At the reasonable efforts hearing, the caseworker also noted that father had not completed a mental health evaluation, but she did not state that father's failure to do so was preventing the Department from providing family time or that the Department believed father needed to complete the mental health evaluation before family time could begin.

12

family time begin, and father wrote accountability letters.[5]  As a consequence of these misunderstandings in the eleven months leading up to the reasonable efforts hearing, not only were the parties operating under an order that had been entered without the required timely hearing under section 19-3-217(3), but the Department was also withholding therapeutic family time sessions without a court order to do so.  Based on those circumstances, we cannot agree with the juvenile court's conclusion that, in the eleven months between its order for therapeutic family time and the reasonable efforts hearing, the Department "made reasonable efforts in an attempt to try [to] establish family time" for father.  *See A.S.L.*, ¶ 8.

---

[5] By doing so, the court effectively delegated the decision about when to start family time to the Department, the GAL-CFY, the children, and the children's therapists.  But whether to suspend family time or require a parent to complete certain tasks before family time can begin are not decisions that a juvenile court may delegate to third parties.  *People in Interest of D.G.*, 140 P.3d 299, 302 (Colo. App. 2006); *see also People in Interest of B.C.*, 122 P.3d 1067, 1071 (Colo. App. 2005) (stating that recommendations as to family time are subject to the continuing supervision and review of the juvenile court, which retains ultimate decision-making responsibility).

## 2. Finding that Family Time with Father Would Be Detrimental to the Children's Mental Health

¶ 28    At the end of the reasonable efforts hearing, the juvenile court stated that it was "not going to modify any family time orders" and that "anything above what the current orders are would be detrimental to the kids." At that time, the "current" family time orders, albeit entered in violation of section 19-3-217(3), required the Department to provide therapeutic family time, meaning family time that was supervised by a therapist. However, the court went on to find that "any additional family time with . . . father would be detrimental to the kids emotionally."

¶ 29    At the time of this finding, father had not received any family time with the children. Thus, while the court stated that it was not modifying its family time orders, it implicitly modified those orders by allowing the Department to continue to withhold family time until the children were deemed ready and father completed certain requirements. We conclude that the order was based on a clearly erroneous finding (that family time with father would be detrimental to the children's mental health).

14

¶ 30     True, there was some support for the juvenile court's finding in the record. The caseworker testified that, at the time of the reasonable efforts hearing, the two older children did not want to see father. She also testified that the children were working through trauma in individual therapy, and consequently, their therapists did not believe that they were ready for family time with father. Thus, she opined as an expert in child protection and child welfare that family time with father was not in the children's best interests because it would be detrimental to their mental health.

¶ 31     However, the caseworker specified that her opinion was based on what the children's therapists recommended. In other words, the caseworker's opinion was based on other professionals' opinions. And those other professionals — the individual therapists — did not testify, leaving the record devoid of any details about the trauma the children were working through in therapy, father's role in that trauma, or how contact with father would negatively impact the children's therapeutic progress. And the caseworker's limited endorsement as an expert in child protection and child welfare was not sufficient to provide the court with a means of evaluating the hearsay opinions of the absent experts. *See* CRE 703; *People in*

15

*Interest of D.M.F.D.*, 2021 COA 95, ¶ 11 (a court may not base its decision on evidence admitted for a limited purpose); *People v. Bornman*, 953 P.2d 952, 956 (Colo. App. 1997) ("Under CRE 703, . . . an expert may rely upon statements or reports of other persons, and he or she may describe those materials. However, such description is not submitted for the truth of the materials' assertion; they are offered only to explain the witness' opinion.").

¶ 32    Based on the record before us, we cannot conclude that the caseworker's blanket adoption of the therapists' recommendations, without further explanation or detail, was sufficient to support the court's finding that therapeutic family time with father would have been detrimental to the children's mental health. Thus, that finding was clearly erroneous. *See Indian Mountain Corp. v. Indian Mountain Metro. Dist.*, 2016 COA 118M, ¶ 31 (a finding is clearly erroneous if, although it is supported by the record, we are nonetheless left, after a review of the entire evidence, with the firm and definite conviction that a mistake has been made). Because there was no other evidence presented that justified the failure to provide father with any form of family time for the duration of the

case, the juvenile court erred by implicitly ordering the Department to continue to withhold father's family time.

### 3. Reasonable Efforts to Provide Family Time Services

¶ 33    We also disagree with the juvenile court's conclusion made at the termination hearing that the Department made reasonable efforts throughout the proceedings to rehabilitate father and reunite the family.  Although the record shows that the Department provided some referrals and services for father, this evidence was not sufficient to support the court's reasonable efforts conclusion because the Department's efforts to provide family time were lacking.

¶ 34    As noted above, family time is a required service, if deemed appropriate by an individual case plan, for parents of children in out-of-home placement.  § 19-3-208(2)(b)(IV).  Here, father's second treatment plan objective was to "participate in regular visitation sessions" when "deemed therapeutically appropriate."  But, by the time of termination, the Department had not facilitated any family time — therapeutic or otherwise — despite the court's ongoing order for family time to occur.  Thus, by the time of termination, father

17

had not seen or talked to the children for nearly two and a half years.

¶ 35    We acknowledge that, throughout the case, the Department and the GAL-CFY continually opined that family time was not appropriate because the children did not want to see father and because their therapists did not believe family time was in their best interests.  Indeed, at the termination hearing, the caseworker testified that the "paramount reason for not having [family time]" was because the children had been "very vocal about not wanting to participate in any family time."[6]  She also testified that none of the children's therapists recommended family time with father.

---

[6] During the course of this case, it appears that the Department and the juvenile court gave the children de facto veto power over whether any family time with father would occur.  We are not aware of any authority that permits children to unilaterally decide if or when family time is appropriate.  While certainly the children's desires should be considered, juvenile courts and the professionals involved with the family are tasked with creating an environment that facilitates safe and meaningful family time in the least restrictive manner possible.  *See D.G.*, 140 P.3d at 302 (the Children's Code requires the juvenile court, itself, to make decisions regarding family time, and it may not delegate this function to third parties); *People in Interest of A.A.*, 2020 COA 154, ¶ 17; § 19-3-217(1.5)(d).

¶ 36     Nonetheless, even assuming that the children did not want to attend family time and that their therapists did not recommend it, the Department had an ongoing obligation to provide appropriate family time services.  *See E.D.*, ¶ 40.  The record does not indicate that the Department met that obligation.

¶ 37     True, the caseworker testified that she made a referral for therapeutic family time, which remained open throughout the case so that family time sessions could begin once the children were ready.  She also testified that, throughout the case, she contacted the children's therapists to get updates on their therapeutic progress, asked father's life skills worker if any additional services might help father understand the needs of the children, and discussed the case with father and his legal team.  And the juvenile court credited the caseworker's testimony in concluding that the Department made reasonable efforts.

¶ 38     We appreciate that some of the Department's errors were driven by the erroneous rulings discussed above.  Nonetheless, we do not agree that the Department's efforts — making a family time referral and communicating with the children's therapists, father's providers, and the professional team — were enough to meet its

obligation under section 19-3-208(2)(b)(IV).  Importantly, providing

family time services uniquely impacts the ability of parents and

children to successfully reunify.  *See* § 19-1-103(64.5) (defining

"[f]amily time" as "any form of contact or engagement between

parents . . . and children or youth for the purposes of preserving

and strengthening family ties"); § 19-3-208(2)(a)(IV) (family time

services shall be designed to facilitate the "speedy reunification" of

parents and children).  Thus, given the importance of family time,

the Department was required to do more to facilitate it for father.

¶ 39    We recognize that a human services department can still

satisfy its reasonable efforts obligation under section 19-3-

208(2)(b)(IV) "by making available and providing appropriate

therapeutic family time services . . . even if those services don't

successfully result in face-to-face contact because of continuing

risks to the child[ren]'s . . . health and safety from such contact."

*E.D.,* ¶ 55.  But to do so, the record must show that the department

made ongoing efforts to move toward face-to-face contact; this

necessarily involves an ongoing evaluation of whether the services

being provided are progressing the goal of face-to-face contact, and

if not, providing additional services and referrals to improve the likelihood of such contact.

¶ 40    For example, in *E.D.*, the juvenile court ordered therapeutic family time after the child attended a supervised family time session with the mother, which ended early because both the child and the supervisor felt unsafe in the mother's presence. *See id.* at ¶ 15. Thereafter, the court held review hearings every thirty to sixty days to monitor the progress of the therapeutic family time. *Id.* at ¶ 22. Initially, it ordered that the child and the mother continue to work with their individual therapists and that those therapists communicate with each other. *Id.* at ¶ 21. But in addition to individual therapy, the human services department also referred the family to a reintegration specialist who met with the child and the mother separately. *Id.* at ¶ 23. When the reintegration specialist determined that the child was not ready for contact with the mother, the specialist worked with her individual therapist to help her write a clarification letter to the child. *Id.* When that did not result in the child being ready for contact with the mother, the department referred her to a different specialist who was tasked

with creating a plan for contact between the mother and the child. *Id.* at ¶ 25.

¶ 41 Based on those recommendations, the department referred the mother to Trust Based Relational Intervention training, referred the child to a different individual therapist, and referred the family to a second reintegration therapist. *Id.* at ¶ 26. Although the second reintegration therapist made progress with the family, the child experienced a flashback while meeting with the therapist, which led to a recommendation that the child work through his trauma before continuing reintegration therapy. *Id.* at ¶ 27. Thus, although no face-to-face contact occurred, the juvenile court found, and a division of this court agreed, that the department made reasonable efforts to reunify the mother with her child. *Id.* at ¶ 40.

¶ 42 By contrast, in this case, within a month of the juvenile court's order for therapeutic family time, the Department made referrals for individual therapy, and the children and father began seeing their therapists. Around the same time, the Department made a referral for therapeutic family time. For the following two years, however, the Department did not provide any additional family time services or referrals, even though it was clear that

22

nothing was changing in terms of the children's progress toward family time. Indeed, at the reasonable efforts hearing, the caseworker testified that the family time services and referrals provided by the Department had been the same for nearly a year even though no meaningful progress occurred. When asked at the termination hearing about the Department's efforts to facilitate family time, the caseworker had nothing new to share; she stated only that the Department had made a referral for therapeutic family time and had ensured that the children and father were in individual therapy.

¶ 43     We reject the Department and the GAL-CFY's argument that father's unwillingness to write accountability letters to the children or complete a mental health evaluation excused its obligation to provide family time. True, at the termination hearing, the caseworker testified that for family time to begin, father was

required to write letters showing "some sort of acknowledgement"[7] and complete a mental health evaluation. But as noted, the record does not indicate that the juvenile court ever ordered father to write accountability letters or complete a mental health evaluation as prerequisites for therapeutic family time to begin. And neither the Department nor the GAL-CFY had the authority to unilaterally implement prerequisites to family time. *See People in Interest of D.G.*, 140 P.3d 299, 302 (Colo. App. 2006).

¶ 44 Even if we were to assume that, at some unidentified point in the proceedings, the court implicitly adopted the Department and GAL-CFY's recommendation that father be required to write accountability letters and complete a mental health evaluation *before* family time could begin, that implicit order constituted yet

---

[7] Although the caseworker testified that father needed to write letters to the children to move toward face-to-face contact with the them, it is unclear from the record whether the Department and GAL-CFY believed father needed to admit that he had abused or neglected the children despite the fact that he entered a no-fault admission and adamantly denied the allegations of abuse or neglect. At one point, the caseworker testified that he needed to "take accountability for what had happened" to the children and his "role in the trauma that the kids have endured." She also testified that father needed to acknowledge "the concerns that caused this case to open where he was part of it."

another restriction on father's family time.  Thus, a hearing would have been required before that restriction could enter.  *See* § 19-3-217(3).

### D.    Conclusion

¶ 45    Based on the foregoing, we conclude that the juvenile court erred by (1) failing to hold a hearing as required by section 19-3-217(3) before increasing the level of family time supervision; (2) denying father any family time during the course of this case; and (3) ultimately concluding that the Department made reasonable efforts to reunify father with the children.

¶ 46    The court's failure to ensure, and the Department's failure to provide, adequate family time services at any time during the two and a half years prior to termination substantially restricted father's statutory right to family time and prevented meaningful progress toward reunification of father with his children.  Thus, the error was not harmless, and reversal of the termination judgment is required.  *See People in Interest of M.V.*, 2018 COA 163, ¶ 66 (explaining that an error is not harmless if "it can be said with fair assurance that [the error] substantially influenced the outcome of the case or impaired the basic fairness of the trial itself"), *overruled*

*on other grounds by*, *People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42.

### III.    Ineffective Assistance of Counsel

¶ 47    Father also contends that his counsel provided ineffective assistance at both the adjudicatory and termination phases of the proceedings.  We need not address father's ineffective assistance of counsel claim based on his counsel's performance at the termination hearing because, as explained above, we reverse the termination judgment on other grounds.  However, we conclude that father did not have a full and fair opportunity, until this appeal, to raise his claim of ineffective assistance of counsel based on counsel's performance at the adjudicatory hearing.  And, based on father's assertions,[8] we conclude that it is appropriate to remand the case to the juvenile court to hold a hearing to determine whether father received effective assistance of counsel at the adjudicatory hearing.

---

[8] In assessing a claim of ineffective assistance of counsel in the criminal context, we have the benefit of a motion under Crim. P. 35. But because we do not have an analogous rule in the dependency and neglect context, we rely upon counsel's allegations in the appellate briefs to assess the claim.

## A. Applicable Law

¶ 48    A parent has a statutory right to effective counsel in dependency and neglect proceedings. §§ 19-1-105(2), 19-3-202(1), C.R.S. 2025; *A.R. v. D.R.*, 2020 CO 10, ¶ 47. A parent can raise a claim of ineffective assistance of counsel in a dependency and neglect proceeding for the first time on appeal. *People in Interest of C.H.*, 166 P.3d 288, 291 (Colo. App. 2007).

¶ 49    However, in an appeal from a judgment terminating parental rights, an appellate court may consider a claim of ineffective assistance of counsel based on counsel's performance at the prior adjudicatory hearing "only when the party asserting the claimed ineffective assistance did not have a full and fair opportunity to bring such a claim immediately after his or her child was adjudicated dependent and neglected (as, for example, by way of a direct appeal of the adjudication order)." *A.R.*, ¶ 85; *see also* § 19-1-109(2)(c), C.R.S. 2025 (stating that an order adjudicating a child dependent or neglected is final and appealable upon entry of the initial dispositional order). Thus, a parent's assertion of ineffective assistance of counsel based on counsel's performance at the adjudicatory hearing is untimely if raised following the termination

27

of parental rights if (1) the parent was aware (or reasonably should have been aware) of the facts giving rise to any claim of ineffective assistance at the adjudicatory hearing at or shortly after that hearing; (2) the parent made no effort to file a timely appeal from the adjudication order; and (3) the record does not disclose any factual or legal impediments to the parent's ability to pursue a timely appeal. *See A.R.*, ¶ 43.

¶ 50 To establish a claim of ineffective assistance of counsel, a parent must show that (1) counsel's performance was deficient because it fell outside the wide range of professionally competent assistance; and (2) but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *A.R.*, ¶¶ 48-51, 60; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If the parent fails to establish either prong of this test, the claim fails." *People in Interest of C.B.*, 2019 COA 168, ¶ 26.

¶ 51 Under this approach, we must remand for an evidentiary hearing if the parent's allegations are sufficiently specific and compelling to constitute a prima facie showing of ineffective assistance of counsel. *A.R.*, ¶ 63. However, if the parent's

allegations lack sufficient specificity, we may summarily deny the ineffective assistance of counsel claim. *Id.*

### B. Analysis

¶ 52 As a threshold matter, we conclude that father's assertion of ineffective assistance of counsel based on his counsel's performance at the adjudicatory hearing is properly before us because he did not have a full and fair opportunity to bring the claim immediately after the children were adjudicated dependent or neglected. True, father did not try to timely appeal the adjudication judgment. But we cannot say, on the record before us, that he was aware (or reasonably should have been aware) of the facts giving rise to his ineffective assistance of counsel claim at or shortly after the adjudicatory hearing. *See A.R.*, ¶ 43.

¶ 53 Recall that father did not appear at the adjudicatory hearing when his counsel entered the admission on his behalf. If father had appeared, then the court could have advised him about the consequences of the admission and his right to appeal and ensured that father knew that the children had been adjudicated dependent or neglected. Or, if counsel had filed an appropriate written advisement signed by father, then we could conclude that father

reasonably should have known that his counsel entered an admission on his behalf and that the children had been adjudicated dependent or neglected. However, the record confirms that (1) the court did not advise father about the admission, adjudication, or right to appeal; and (2) father never signed a written advisement.

¶ 54    Father argues that because he was never advised about the admission and his counsel did not tell him that an adjudicatory judgment had been entered, he had no way of knowing that he needed to file an appeal. To that end, father contends that, up until termination, he believed "that he was being afforded a treatment plan and a chance to be reunited with his children without admitting that the children were dependent and neglected, and without conceding that he was less than a fully fit parent in any way."

¶ 55    We recognize that before the juvenile court accepted the admission and adjudicated the children dependent or neglected, father's counsel stated that he had spoken to father about making an admission "multiple times" in the months leading up to the adjudicatory hearing. Counsel also stated, "I do think [father] understands what he's entering into, as well as he does understand

30

that the next phase of this case will be the treatment plan that he's hoping to work relatively quickly to get his kids back with him." But even if we assume that father's counsel advised him about entering an admission before the adjudicatory hearing, nothing in the record indicates that his counsel informed him after the adjudicatory hearing that the adjudicatory judgment had entered. And if father did not know that his counsel entered an admission on his behalf or that the children had been adjudicated dependent or neglected, then it is unclear how he would have known the facts giving rise to his ineffective assistance of counsel claim or that he needed to file a timely appeal of the adjudicatory judgment.

¶ 56    The facts of this case are distinguishable from the facts of *A.R.* Like in this case, the parent's counsel in *A.R.* entered an admission to the allegations in the petition in the parent's absence and without obtaining a signed advisement. *Id.* at ¶¶ 10-12. However, on appeal from the judgment terminating her rights, that parent claimed that she had been unable to timely appeal the adjudication because the court did not enter a written, appealable order. *See id.* at ¶ 44. The supreme court rejected her claim as untimely because the parent "was aware (or reasonably should have been aware)"

shortly after the adjudicatory hearing of the facts underlying her ineffective assistance of counsel claim but failed to request a final, written order and never attempted to appeal the adjudication. *See id.* at ¶¶ 43-44. Importantly, the parent in *A.R.* did not claim, as father does in this case, that her counsel never told her that an admission and adjudication had been entered in her absence.

¶ 57 Accordingly, because we cannot say that father knew or reasonably should have known that he needed to appeal the adjudicatory judgment, we may properly consider his claim of ineffective assistance based on his counsel's performance at the adjudicatory hearing. *See id.* at ¶¶ 2, 43-44, 85.

¶ 58 Father claims that his counsel's performance was deficient because counsel entered an admission without his knowledge or permission and then failed to inform him that the adjudication had entered. He also alleges that he did not want to enter an admission and that if he had known that counsel was planning to admit the petition on his behalf, he would have demanded an adjudicatory hearing because he believed he was a fit parent. He also asserts that an evidentiary hearing or jury trial would have resulted in dismissal of the petition because the Department never presented

any direct evidence, at any stage of the proceedings, that father had abused or neglected the children.

¶ 59 Father's allegations are sufficiently specific and compelling to constitute a prima facie showing of ineffective assistance of counsel. But we cannot resolve the claim on appeal because it involves questions of fact that have not been resolved by the juvenile court — namely, whether father's counsel advised him of the consequences of entering an admission; whether counsel informed him, after the adjudicatory hearing, that counsel had entered an admission on his behalf and that the juvenile court had adjudicated the children dependent or neglected; and whether there was a reasonable likelihood that he would have prevailed at the adjudicatory hearing if no admission had been entered on his behalf. Thus, we must remand the case to the juvenile court to hold a hearing on whether father received effective assistance of counsel at the adjudicatory hearing. *See id.* at ¶ 63.

## IV.   Disposition

¶ 60 The termination judgment is reversed, and the case is remanded to the juvenile court for further proceedings as follows:

- The court shall hold an evidentiary hearing to determine whether and what type of family time services are necessary and appropriate for father and the children. *See* § 19-3-217(3). Thereafter, the Department shall make reasonable efforts to provide family time services in compliance with section 19-3-208(2)(a)(IV), (2)(b)(IV).

- Contemporaneously, the court shall hold an evidentiary hearing to determine whether father received ineffective assistance of counsel at the adjudicatory hearing.

- If the court determines that father received ineffective assistance of counsel at the adjudicatory hearing, then the court shall vacate the judgment adjudicating the children dependent or neglected and hold a new adjudicatory hearing. *See* § 19-3-505(1), C.R.S. 2025. Any party may appeal that decision. *See* § 19-1-109(2)(c).

- If the juvenile court determines that father received effective assistance of counsel at the adjudicatory hearing, then the adjudicatory judgment stands affirmed.

Any party may thereafter appeal the order resolving the ineffective assistance of counsel contention. *See id.*

- The court and the parties must give priority to holding both evidentiary hearings on family time and father's ineffective assistance of counsel claim.

JUDGE FREYRE and JUDGE BROWN concur.